In the Interest of H.N.B. and A.J.B., Minor Children,

B.L. and C.L., Appellants.

No. 00–97.

Supreme Court of Iowa.

Nov. 16, 2000.

Elizabeth A. Rosenbaum, Sioux City, for appellants.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, and Dewey Sloan, Assistant County Attorney, for appellee-State.

Suzan E. Boden of Vriezelaar, Tigges, Edgington, Rossi, Bottaro & Boden, L.L.P., Sioux City, for appellee-guardians.

Marchelle Denker of the Juvenile Law Center, Sioux City, for minor children.

CADY, Justice.

Byron and Christina Loft appeal from an order by the district court denying their motion to intervene in a parent-child termination proceeding. We affirm the district court.

## I. Background Facts and Proceedings.

Byron and Christina Loft are kind and caring people who sought to intervene in this parent-child termination action after the juvenile court entered an order terminating parental rights to the children in interest. The Lofts had been foster parents to one of the children for a period of time prior to the termination action, and sought to intervene to seek custody and guardianship of the children for the ultimate purpose of adopting them.

The children in interest are sisters, who have been identified as H.N.B. and A.J.B. H.N.B. was born March 12, 1996, and A.J.B. was born October 26, 1997. Both children are enrolled members of the Rosebud Sioux Tribe of South Dakota. They share the same natural mother and

father, whose parental rights were terminated on April 16, 1999. The termination orders are not at issue in this appeal.[1] The Lofts filed their motion to intervene and application for custody and guardianship on June 11, 1999.

Byron is an enrolled member of the Canadian Tribe of the Mohawks of the Bay of Quinte. Although this tribe is a member of the Six Nations Confederacy,[2] it is not federally recognized by the United States Secretary of the Interior. Christina is Caucasian and suffers from Crohn's disease. Both of the Lofts are thirty-two years old. The Iowa Department of Human Services recognizes the Loft home as a Native American foster family. They were foster parents to H.N.B. for approximately nine months. This foster care placement ended in May 1997.

On June 28, 1999, Carleton and Shirley Helseth filed a motion to intervene and an application for custody and guardianship of H.N.B. and A.J.B. Like the Lofts, they too are kind and caring people who have opened their home for foster care. The children have been in the Helseths' foster care home since March 4, 1998, and have developed a strong bond with them.

Carleton is a doctor at Grandview Medical Center in Sioux City, while Shirley is a registered nurse. Shirley stopped working after H.N.B. and A.J.B. were placed in the Helseths' care. Carleton is seventy-one years of age and has been diagnosed with Parkinson's disease. Shirley is fifty-one years old. They are both Caucasian. The Helseths' home is a licensed foster family home.

The Rosebud Sioux Tribe filed a motion to transfer jurisdiction and dismiss on August 6, 1999, arguing the Indian Child Welfare Act [hereinafter ICWA] governed the proceedings. The district court con-solidated all of the pending motions and held a hearing. After the presentation of the evidence, the Lofts withdrew their guardianship application.

The district court denied the Rosebud Sioux Tribe's motion to transfer jurisdiction and dismiss, finding that good cause existed to modify the preferences of the ICWA. The district court also denied the Lofts' motion, but granted the Helseths' motion to intervene and ordered guardianship and custody of the children to be transferred to the Helseths. The court noted that the Helseths had established a substantial family relationship with H.N.B. and A.J.B., and that the children's natural mother requested that the children stay with the Helseths.

The Lofts appealed, advancing several arguments, including that the district court erroneously denied their motion to intervene. The Lofts claim they are sufficiently interested in the litigation before this court, especially considering the provisions of the ICWA, and therefore have a right to intervene. The Lofts also allege a variety of claims related to the failure of the district court to follow the preferences of the ICWA.

The Rosebud Sioux Tribe has not appealed. However, the Tribe has filed a position statement with this court, requesting that H.N.B. and A.J.B. be placed with the Lofts if the court refuses to return them to the Tribe.

## II. Scope of Review.

■ Our review of a denial of a motion to intervene is for the correction of errors at law. *In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997); *In re B.B.M.*, 514 N.W.2d 425, 426 (Iowa 1994). Although our review is on error, we accord some discretion to the district court. *A.G.*, 558 N.W.2d at 403; *B.B.M.*, 514 N.W.2d at 426. The

---

1. Only the father appealed his termination of parental rights. The court of appeals affirmed the termination on December 13, 1999.

2. The other five member tribes are located in the United States and are federally recognized by the United States Secretary of the Interior.

district court exercises this discretion when determining whether an applicant intervenor is "interested" in the litigation before the court. *A.G.*, 558 N.W.2d at 403.

## III.   The Right of Intervention.

█   The fundamental and paramount issue we face in this case is whether the Lofts have a right to intervene. Iowa Rule of Civil Procedure 75 delineates who is generally entitled to intervention.[3] Rule 75 provides "[a]ny person interested in the subject matter of the litigation, ..., may intervene at any time before trial begins...." Iowa R. Civ. P. 75. Although we are to liberally construe the rule of intervention, we must be certain that the applicant has asserted a legal right or liability that will be directly affected by the litigation. *In re J.R.*, 315 N.W.2d 750, 752 (Iowa 1982).

█   In determining whether an applicant has a legal interest, we examine the source of the right claimed. *A.G.*, 558 N.W.2d at 403. An indirect, speculative, or remote interest will not provide one a right to intervene. *Id.*; *see* 59 Am.Jur.2d *Parties* § 134, at 591–92 (1987) (to have an interest in an action, a person must assert more than a mere general interest in the subject matter of the litigation); 67A C.J.S. *Parties* § 75, at 815 (1978) (same). Thus, the mere interest or desire to adopt a child will not qualify as a sufficient interest. *B.B.M.*, 514 N.W.2d at 427 (noting that if such an interest were found sufficient, an unlimited number of people would be entitled to intervene); *In re C.L.C.*, 479 N.W.2d 340, 344 (Iowa App.1991) (same). On the other hand, statutes often provide the best guidance in determining who possesses the right to intervene. 59 Am. Jur.2d *Parties* § 133, at 587 ("[t]he right of intervention depends largely on the construction of the particular statute or rule

under consideration"); *see also A.G.*, 558 N.W.2d at 403 (statute may support right to intervention if the right will be directly affected by the outcome of the suit).

█   Section 232.117(3) of the Iowa Code is the statute applicable to this matter. It provides in pertinent part:

> If the court terminates the parental rights of the child's parents, the court shall transfer the guardianship and custody of the child to one of the following:
>
> . . . .
>
> c.   A parent who does not have physical care of the child, other relative, *or other suitable person.*

Iowa Code § 232.117(3) (1999) (emphasis added). Thus, after a juvenile court terminates the parental rights of a child's natural parents, those qualifying as "suitable persons" under section 232.117(3) are given the legal right to be considered as the child's guardian. *C.L.C.*, 479 N.W.2d at 343 (relying on the rationale of *J.R.*, 315 N.W.2d at 750).

█   The term "suitable person" is not defined by our legislature. *C.L.C.*, 479 N.W.2d at 344. Instead, it is a flexible term which provides the district court with discretion to determine the "suitable person" status based on the particular facts of each petition for intervention. *See A.G.*, 558 N.W.2d at 404; *C.L.C.*, 479 N.W.2d at 344. Thus, the Lofts have a statutory avenue to intervene if their interest is sufficient enough to rise to the level of a "suitable person" for the purpose of appointment as custodian and guardian following the termination.

█   The sufficiency of the interest asserted by the intervenor under the "suitable person" provision is considered in light of the nature of the proceeding and surrounding facts and circumstances. *See A.G.*, 558 N.W.2d at 404; *B.B.M.*, 514

---

3.   Although we do not automatically apply the rules of civil procedure to a juvenile proceeding, we have permitted applicants to intervene in a termination of parental rights proceeding. *In re A.G.*, 558 N.W.2d 400, 402

(Iowa 1997); *In re J.R.*, 315 N.W.2d 750, 752 (Iowa 1982) (noting "[t]he termination of parental rights provisions of the juvenile justice code do not set out procedures of intervention").

N.W.2d at 427–28. Additionally, the focus must always include the welfare and best interests of the child. *See B.B.M.*, 514 N.W.2d at 428. The intervention must be compatible with the child's best interest. *See id.* at 429 (cannot elevate interests of intervening grandparents above those of the child).

We have previously indicated that the closeness of the relationship between the child in interest and the intervenor is a critical factor in determining the sufficiency of the interest of an intervenor. *See id.* Thus, in *B.B.M.*, we found the lack of an ongoing relationship between the child in interest and his grandparents weighed against intervention by the grandparents in a termination proceeding. *Id.* On the other hand, the formation of a close relationship between the intervenor and the children in interest has supported a petition for intervention in a parent-child termination action. *See C.L.C.*, 479 N.W.2d at 344. In *B.B.M.*, the grandparents were literally "strangers" to the child, *B.B.M.*, 514 N.W.2d at 429, while in *C.L.C.*, the couple who sought to intervene had devoted a significant amount of time each week to the children for nearly two years prior to the intervention. *C.L.C.*, 479 N.W.2d at 344. They also provided financial support to the children. *Id.*

■ Another factor in determining a "suitable person" is the existence of other prospective adoptive parents who maintain a strong relationship with the child. If the child has no strong bond with a prospective adoptive parent, the intervenors' own lack of an ongoing relationship with the child becomes less important in determining their suitability to intervene. *See B.B.M.*, 514 N.W.2d at 429 (children had not established bonds of affection); *J.R.*, 315 N.W.2d at 753 (children had established bonds of affection).

The Lofts, unlike the couple in *C.L.C.*, have not established a family relationship with H.N.B. and A.J.B. The Lofts were foster parents to H.N.B. for nine months, but this ended in May 1997, when H.N.B.

was fourteen months old. The Lofts have not had contact with her since that time. More than two years have passed from the time the Lofts have had any contact with H.N.B. and the filing of the petition for intervention. In addition, the Lofts have never had any contact with A.J.B. Thus, the Lofts have not established the same level of relationship as the prospective adoptive parents did in *C.L.C.* Furthermore, there is ample evidence that the children have a positive ongoing relationship with foster parents who do desire to adopt.

■ Other factors may also exist to support the existence of a sufficient interest to justify intervention. *See B.B.M.*, 514 N.W.2d at 430–31 (medical necessity may support intervention). In this case, the Lofts assert the provisions of the ICWA apply and enhance their suitability. We agree that H.N.B. and A.J.B. are Indian children for purposes of the ICWA. *See* 25 U.S.C.A. § 1903(4) (1983) ("'Indian child' means any unmarried person who is under age eighteen and is . . . a member of an Indian tribe. . . ."). However, Byron does not satisfy the definitional requirements of an Indian under the ICWA. To be recognized as an Indian, an individual's tribe must be eligible for benefits provided by the Secretary of the Interior. *See* 25 U.S.C.A. §§ 1903(3) (definition of Indian), 1903(8) (definition of Indian tribe). Byron's tribe, the Mohawks of the Bay of Quinte, is not federally recognized by the Secretary. Therefore, because Byron is not an Indian under the ICWA, the Lofts cannot be considered an Indian family, and are not entitled to a preference in the adoptive placement of Indian children. *See* 25 U.S.C.A. § 1915(a) (with the adoption of an Indian child, a preference in placement is given to: "(1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) *other Indian families* " (emphasis added)).

■ In addition, the Lofts are not entitled to a preference for foster care or

preadoptive placement as a "foster home ... approved, or specified by the Indian child[ren's] tribe." 25 U.S.C.A. § 1915(b)(ii). The Rosebud Sioux Tribe did file a position statement with this court requesting the children to be placed with the Lofts if we do not place them with the Tribe. However, we do not find a position statement to be the equivalent of Tribe approval or specification as required by section 1915(b)(ii). Thus, because the ICWA is inapplicable to the Lofts, the ICWA does not enhance their suitability to be guardians under Iowa Code section 232.117(3).

We are unable to distill any other circumstances from the facts presented to the district court to support intervention by the Lofts. We understand Byron still has the ability to raise the children in an Indian culture even though the law gives him no recognized preference. The children will benefit from an environment which will maintain their heritage and culture as they grow into adults, and the ability of prospective parents to do this will be a proper consideration in the proceedings that will follow in this case. Thus, it is a factor to consider in permitting intervention, but one we think the district court considered. Moreover, it is not sufficient enough for us to conclude the district court abused its discretion in failing to permit intervention by the Lofts considering all the circumstances.

We conclude the district court acted within its discretion in finding the interests of the Lofts as "suitable persons" under section 232.117(3) were insufficient to support intervention. The term "suitable persons" cannot be interpreted to include every non-relative interested in adopting a child. *C.L.C.,* 479 N.W.2d at 344. Moreover, it cannot be interpreted to include intervenors who have had no relationship with the children when the children maintain an ongoing relationship with a foster family who do want to adopt. The Lofts do not possess a sufficient interest in

light of all the circumstances of the case, and consequently do not have a legal right that will be directly affected by the litigation as required by Rule 75. Thus, because we affirm the denial of the Lofts' motion to intervene, we need not address any other issues presented.

## IV. Conclusion.

We conclude the district court properly denied the Lofts' motion to intervene. Our resolution of this issue disposes of the remaining claims.

**AFFIRMED.**

McGIVERIN, Senior Judge,* participates in place of LARSON, J., who takes no part.