## IN THE COURT OF APPEALS OF IOWA

No. 16-0335
Filed May 25, 2016

**IN THE INTEREST OF M.M.,**
**Minor child,**

**J.F. AND L.F.,**
Appellants.

_____

Appeal from the Iowa District Court for Polk County, Susan C. Cox, District

Associate Judge.


A child's relatives appeal the juvenile court order denying their motions to

intervene in the termination-of-parental-rights proceedings and for change of

placement to return the child to their care. **AFFIRMED.**


Debra A. Hockett-Clark of Hockett-Clark Law Firm, West Des Moines, for

appellants.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

Stephie N. Tran, Des Moines, for minor child.


Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

A child's relatives appeal the juvenile court order denying their motions to intervene in the termination-of-parental-rights proceedings and for change of placement to return the child to their care. Although the relatives had an interest in intervening in the proceedings, granting the motions would not be in the child's best interests. Accordingly, we affirm.

The child at issue is an enrolled member of the Sokaogon Chippewa Community, the Mole Lake Band of Lake Superior Chippewa Indians, and is an "Indian child" as defined in Iowa Code section 232B.3(5) and (6) (2013). At one year of age, the child was adjudicated to be a child in need of assistance due to concerns about the parents' domestic abuse, mental health, and substance abuse issues. The child was removed from the parents' care and placed with J.F., a maternal great uncle who is also an enrolled member of the Sokaogon Chippewa Community, and his wife, L.F. Eventually, the juvenile court terminated parental rights and ordered that the child remain in the guardianship of the Department of Human Services (DHS) and custody of J.F. and L.F. The mother appealed, and we affirmed the termination of her parental rights. *In re M.M.*, No. 14-2131, 2015 WL 807875, at *2 (Iowa Ct. App. Feb. 25, 2015).

After parental rights were terminated, concerns surfaced regarding J.F. and L.F.'s care of the child. It was believed that J.F. and L.F. were allowing the child's mother to continue to be involved in the child's life in spite of the termination of her parental rights. This concern was bolstered by the fact that J.F. and L.F. did not express an interest in adoption until almost two years after taking custody of the child, and they failed to initiate the adoption process until

several months after that time. There were also concerns regarding domestic violence and substance abuse in J.F. and L.F.'s home. One particular concern was J.F. and L.F.'s teenage son, who had assaulted L.F. and continued to reside in the home. The son also assaulted the child over a juice box.

The DHS began exploring alternative placements for the child after an incident in which the son became out of control and began punching walls in the home, and an intoxicated J.F. chased the son from the home and around the neighborhood with a broom. The State then moved to modify placement to place the child with W.D. and T.D., who are relatives of the child, have foster-care licenses, and would encourage the child's connection to the child's "Native American Heritage." The child's tribe had no objection to W.D. and T.D. adopting the child, and the guardian ad litem supported change of placement, which the juvenile court granted.

After the child was removed from their care, J.F. and L.F. moved to intervene and to change the child's placement, seeking to have the child returned to their care. While their motions were pending, J.F and L.F.'s adoption home study was denied, and the DHS subsequently denied J.F. and L.F.'s application to adopt the child. After a hearing was held over the course of three days spanning two months, the juvenile court entered an order denying the motions. The court found it was not in the child's best interests to allow J.F. and L.F. to intervene, and even if intervention was granted, it would not be in the child's best interests to return the child to J.F. and L.F.'s care.

On appeal, J.F. and L.F. argue the juvenile court erred in denying their requests to intervene and change placement. They also contend their due

process rights were violated because their motions were not heard "in a meaningful manner."

### I. Motions to Intervene and For Change of Placement.

We review the juvenile court's denial of a motion to intervene for the correction of errors at law. *See In re H.N.B.*, 619 N.W.2d 340, 342 (Iowa 2000). Iowa Rule of Civil Procedure 1.407(1) provides that if a statute does not confer an unconditional right to intervene, a person may intervene if that person "claims an interest relating to the . . . transaction which is the subject of the action and . . . is so situated that the disposition of the action may as a practical matter impair or impede the . . . ability to protect that interest, unless the . . . interest is adequately represented by existing parties." We afford the juvenile court discretion in determining whether the intervenor has an interest in the litigation. *See In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997).

In determining whether a party has an adequate legal interest to intervene in an action, "we examine the source of the right claimed." *H.N.B.*, 619 N.W.2d at 343. Our legislature has set forth who may be appointed custodian or guardian once parental rights to a child are terminated. *See* Iowa Code § 232.117(3). This includes "[a] parent who does not have physical care of the child, *other relative*, or other suitable person." *Id.* § 232.117(3)(c) (emphasis added). As relatives of the child, J.F. and L.F. had a legal interest in intervening. *See A.G.*, 558 N.W.2d at 403 (holding grandparents, as relatives, possess a sufficient legal interest in the outcome of a termination proceeding to allow intervention because relatives have a legal right to be considered for guardianship and custody under section 232.117(3)). However, in determining

whether to allow a party to intervene, "the focus must always include the welfare and best interests of the child. The intervention must be compatible with the child's best interest[s]." *H.N.B.*, 619 N.W.2d at 344 (citation omitted). The juvenile court should be reluctant to allow a party to intervene when intervention "will delay a child's adoption and/or chance for permanency." *In re E.G.*, 738 N.W.2d 653, 656 (Iowa Ct. App. 2007).

In its order denying J.F. and L.F.'s motion to intervene, the juvenile court noted that it was "extremely concerned" that granting the motion to intervene would cause a "serious delay" in obtaining a permanent placement for the child and would also be "inconsistent" with the DHS's determination that their adoption petition should be denied and an alternative placement found. The juvenile court held the motion would also "unfairly delay" adoption of a child who "has waited too long for permanency." In finding that allowing J.F. and L.F. to intervene would not be in the child's best interests, the juvenile court also cited J.F. and L.F.'s abdication of their parental responsibilities by allowing the child's mother continued involvement in the child's life, J.F. and L.F.'s ongoing struggle to parent their own son and the role alcohol and violence played in that struggle, and the child's improvement since being placed in the care of W.D. and T.D., who identified and addressed the child's needs. On the record before us, we cannot find the court erred in determining intervention would be contrary to the child's best interests. Accordingly, we affirm. Even assuming J.F. and L.F. should have been allowed to intervene, the court properly denied the motion to change the child's placement to return the child to their care for the reasons stated above.

### *II. Due Process Claim.*

J.F. and L.F. argue the juvenile court abused its discretion in ending the hearing on their motions "before they were finished presenting their side of the case," claiming they "had additional evidence they wanted to present to dispute allegations made by [the] DHS and the Iowa Kids Net worker, but were not afforded the opportunity." No further explanation is provided as to what additional evidence was to be presented or by whom.

Our review of the record does not reveal where the trial court denied J.F. and L.F. the ability to present evidence. When asked on the third day of the hearing how many more witnesses had yet to be called, J.F. and L.F.'s counsel replied she only had two: a DHS adoption specialist and L.F. Counsel then added that "the tribal [council] wanted to be heard," and the court replied, "Okay. As indicated before, this is the third day, and we will be done by 4:30." After the DHS adoption specialist testified and at the conclusion of L.F.'s testimony, the court asked J.F. and L.F.'s counsel if she had additional questions, to which counsel stated, "No, Your Honor. I would just like to give the tribe a moment to speak if they would like to." The court then asked counsel whether "there are any further witnesses on behalf of your clients," and counsel replied, "No, Your Honor." Counsel did not make a request to present additional evidence. Therefore, any claim regarding the juvenile court's alleged refusal to allow J.F. and L.F. to present additional evidence has not been preserved for our review.[1]

---

[1] To the extent this claim is a reference to counsel's statement informing the court that the tribal chairperson wanted to be heard, we note that although the tribe never formally intervened in the matter, the juvenile court stated at the conclusion of the hearing that it

*See In re C.D.*, 508 N.W.2d 97, 100 (Iowa Ct. App. 1993) (noting claims are not preserved for appeal if they are not raised at trial).

### III. Conclusion.

The juvenile court properly denied J.F and L.F.'s motions to intervene and for change of placement. Accordingly, we affirm.

**AFFIRMED.**

---

would permit the tribe "to file a written statement or written remarks to the court," along with the parties' written closing remarks.