# IN THE COURT OF APPEALS OF IOWA

No. 17-1178
Filed October 11, 2017

**IN THE INTEREST OF W.A., C.A., B.A., and H.A.,**
**Minor Children,**

**N.A., Grandmother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Warren County, Kevin A. Parker, District Associate Judge.


　　　A grandmother appeals a juvenile court order denying her motions for intervention and visitation.  **AFFIRMED.**


　　　Laura Jean Lockwood of Hartung & Schroeder, L.L.P., Des Moines, for appellant grandmother.

　　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

　　　Nancy L. Pietz of Pietz Law Office, Des Moines, attorney and guardian ad litem for minor child W.A.

　　　Mary Kathryn Miller of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children C.A., B.A., and H.A.


　　　Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

The appellant, N.A., is the biological, paternal grandmother of the children in interest. She appeals a juvenile court order denying her motions for intervention and visitation.[1] Her viable arguments on appeal are that the district court erred in (1) not allowing her to intervene and (2) denying her request for visitation.[2]

## I. Background Facts and Proceedings

The children's parents' parental rights as to all four children were terminated in October 2016. This court subsequently affirmed the termination of both parents' parental rights. *See generally In re W.A.*, No. 16-1774, 2017 WL 104975 (Iowa Ct. App. Jan. 11, 2017). In December, the juvenile court ordered the children be placed in the custody and guardianship of the Iowa Department of Human Services (DHS) for purposes of adoption. DHS began exploring

---

[1] N.A. withdrew her motion to intervene with regard to W.A. before the district court and has "withdraw[n] her appeal with respect to W.A." as well. As such, this appeal only concerns C.A., B.A., and H.A.

[2] N.A. also argues the juvenile court erred in denying her request that the children be placed with her. We agree with the State that this argument was not preserved for our review. Although her motions and brief in the district court touched on the placement issue, her counsel effectively withdrew the argument at hearing, stating: "[M]y client is only asking that she be a party to this case, not that she be considered for placement right at this moment. She understands that [there are] steps that need to be taken before that can happen." The district court's subsequent ruling therefore did not address the placement issue. This argument was not preserved for appeal, and we therefore do not consider it. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

She finally argues, "[d]ue to the juvenile court's delay" in ruling on her motions, her "appellate rights have been violated." Because she provides us with no authority to support this contention, we do not consider the argument. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *see also* Iowa R. App. P. 6.903(2)(g)(3). In any event, N.A.'s "appellate rights" were not triggered until the juvenile court issued its ruling. *See* Iowa Rs. App. P. 6.101(1)(a), .103(1). We are obviously considering the appeal and therefore find no grounds for concluding her "appellate rights" were violated.

possibilities for adoption and placed W.A. and B.A in foster care and C.A. and H.A. in relative care with their maternal grandmother. Currently, the maternal grandmother is not an option for permanent placement for C.A. and H.A, but W.A. and B.A.'s foster parents have been approved for adoption.

In January 2017, N.A. moved to intervene in the child-in-need-of-assistance (CINA) and termination-of-parental-rights (TPR) cases, arguing she was an interested party due to her status as the children's grandmother and no other party was representing, or had the ability to represent, her interests. She requested "that the [c]ourt grant her party status in the ongoing . . . cases regarding her grandchildren." A hearing was held on the motion in March; the hearing was limited to argument by the parties and the submission of exhibits. In May, while the matter was still pending, N.A. filed a motion for visitation. In July, the juvenile court entered a written ruling denying both motions and making the following conclusions:

> The parental rights of the parents have been terminated. The children are currently in foster care and relative care (maternal grandmother) and are thriving. [N.A.] has not been a placement for the children since the inception of this matter. It is not in the best interest of the children to allow the paternal grandmother to intervene.

As noted, N.A. appeals.

## II. Standard of Review

"We review the denial of a motion to intervene for correction of errors at law, giving some deference to the district court's discretion." *In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997). We review the denial of grandparent visitation de novo. *See Graves v. Eckman*, 550 N.W.2d 470, 471 (Iowa Ct. App. 1996).

## III. Intervention

Our rules of civil procedure allow for permissive intervention and intervention as a matter of right. *See* Iowa R. Civ. P. 1.407(1)–(2). Motions to intervene are allowed in CINA and TPR proceedings. *A.G.*, 558 N.W.2d at 402–03. N.A.'s argument on appeal is limited to intervention as a matter of right under Iowa Rule of Civil Procedure 1.407(1)(b). Under that rule, courts must allow intervention

> [w]hen the applicant claims an interest relating to . . . the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by another party.

Iowa R. Civ. P. 1.407(1)(b). The district court is allowed a certain amount of discretion in determining whether a proposed intervenor is "interested" in the litigation. *In re H.N.B.*, 619 N.W.2d 340, 342–43 (Iowa 2000); *A.G.*, 558 N.W.2d at 403. Even if a party is entitled to intervention as a matter of right, "in determining whether to allow a party to intervene, 'the focus must always include the welfare and best interests of the child[ren].'" *In re M.M.*, No. 16-0335, 2016 WL 3002817, at *2 (Iowa Ct. App. May 25, 2016) (quoting *H.N.B.*, 619 N.W.2d at 344).

The obvious intent behind N.A.'s pursuit of intervention is to ultimately have the children placed in her care and to permanently adopt them. This court has already noted its concern with the idea of the children being placed with N.A. *See W.A.*, 2017 WL 104975, at *3 (noting "concerns regarding whether [N.A.] could or would keep the children safe from the parents in the future" and discussing N.A.'s minimization of the parents' fault in having their rights

terminated). Other problems have come to light since our decision affirming the termination of the parents' parental rights. Specifically, in February 2017, one of the children reported that N.A. recently facilitated contact between the children and their father during a time period in which N.A. was caring for one of the children while the children's maternal grandmother was out of town. One of these situations included, according to DHS, "completely unsupervised" visitation between one of the children and the father. N.A. allowed this contact despite being advised by DHS "on more than one occasion [that] none of the children are allowed to have face-to-face contact with their biological parents." DHS also received information that while C.A., a twelve-year-old, was alone with his biological father, he was provided alcohol and electronic cigarettes, and the two "drove around on gravel roads consuming alcohol."

A foster and adoptive home study report regarding N.A. also noted concerns that she dislikes DHS's involvement in her grandchildren's lives, it would be difficult for her to collaborate with the agency, she would not maintain proper boundaries between the children and their biological parents, and her "decision making skills could jeopardize the children's safety." The report's author also noted her concern that N.A.'s "motivation for going through this process is to give [the father] back the parenting role once the adoption is finalized." N.A. has also admittedly declined to follow two of the children's therapist's recommendation that she have no contact with them.

Without addressing whether N.A. has a legal interest in the proceedings sufficient to entitle her to intervention as a matter of right, based on the foregoing concerns, together with N.A.'s obvious intentions in pursing intervention, we

agree with the district court that allowing her to intervene would not be in the children's best interests. Allowing N.A. to intervene at this point in the case, well after termination and at a time when one of the relevant children is ready to be adopted and the other two are in need of permanency, would be detrimental to the children's best interests. *See In re E.G.*, 738 N.W.2d 653, 656 (Iowa Ct. App. 2007) ("[T]he juvenile court should be reluctant to grant a . . . petition for intervention if it will delay a child's adoption and/or chance for permanency.").

We affirm the juvenile court's denial of N.A.'s motion to intervene.

## IV.    Visitation

N.A. simply argues she has a relationship with the children and allowing her visitation would be in their best interests. "The power of the juvenile court in CINA proceedings includes determination of visitation rights of parents and grandparents." *In re K.R.*, 537 N.W.2d 774, 777 (Iowa 1995); *see* Iowa Code § 232.102(15). The court may limit a grandparent's visitation rights if doing so would be in the best interests of the children. *K.R.*, 537 N.W.2d at 777; *see In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) ("[T]he nature and extent of visitation is always controlled by the best interests of the child.").

In her motion for visitation, N.A. asserted DHS "attempted to restrict visitation between [her] and her grandchildren without having adequate support." Based on the concerns noted above, we find DHS had adequate support for restricting her visitation and, on our de novo review, we affirm the juvenile court's ruling and find that allowing N.A. visitation would be contrary to the best interests of the children.

We affirm the juvenile court's denial of N.A.'s motion for visitation.

**V.    Conclusion**

We conclude the allowance of N.A.'s intervention and visitation with the children would be contrary to the best interests of the children and therefore affirm the juvenile court's denial of her motions for intervention and visitation.

**AFFIRMED.**