# IN THE COURT OF APPEALS OF IOWA

No. 18-2080
Filed February 20, 2019

**IN THE INTEREST OF T.S.,**
**Minor Child,**

**M.D., Intervenor,**
     Appellant.

_____

Appeal from the Iowa District Court for Cass County, Amy L. Zacharias, District Associate Judge.

A paternal grandmother appeals the denial of her motion to intervene following termination-of-parent-rights proceedings. **AFFIRMED.**

Amanda Heims, Council Bluffs, for appellant intervenor.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Karen L. Mailander of Mailander Law Office, Anita, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A grandmother, Malasondra, appeals the juvenile court's denial of her motion to intervene following termination of her son Shawn's parental rights. She believes she can provide a safe, permanent home for her granddaughter, T.S. But the juvenile court decided intervention was not in the child's best interests because Malasondra and her husband "were not a suitable long-term placement option" for T.S. Finding no error in the juvenile court's analysis, we affirm.[1]

## I.       Facts and Prior Proceedings

T.S. is a fifth grader. Her biological parents are Shawn and Karissa.[2] T.S. lived with Shawn until fall 2016 when he used crack cocaine while caring for her. Later that year, Shawn was convicted in Minnesota of two counts of sexually abusing his cognitively-delayed sister—starting when she was thirteen years old. He received an indeterminate fifteen-year prison sentence. As a result of those events, the Iowa juvenile court terminated his parental rights to T.S. in May 2018.

Shawn's mother, Malasondra, successfully petitioned to intervene in the CINA proceedings. She asked the court to place T.S. with her and her husband, Jeffrey, in their Minnesota home. In response, the juvenile court ordered a home study under the Interstate Compact on the Placement of Children (ICPC). A social worker from the Minnesota Department of Human Services conducted the study

---

[1] We review the denial of a motion to intervene for correction of errors at law. *In re H.N.B.*, 619 N.W.2d 340, 343 (Iowa 2000). "Although our review is on error, we accord some discretion to the district court." *Id.* (citations omitted). "The district court exercises this discretion when determining whether an applicant intervenor is 'interested' in the litigation before the court." *Id.* (citations omitted).

[2] Karissa did not have contact with T.S. for several years before the State opened its child-in-need-of-assistance (CINA) case. Although Karissa took some steps to reconnect with T.S., ultimately she consented to termination of her parental rights.

and denied approval for placement, citing serious concerns about Malasondra's ability to protect T.S. from possible harm.

The social worker was troubled by Malasondra's minimization of Shawn's sexual abuse. Shawn pleaded guilty to repeatedly sexually abusing his sister, G.S., over a period of several years while they both lived at home with Malasondra. But Malasondra characterized the sex acts between Shawn and G.S. as consensual; disbelieved G.S. when she sought help; and blamed G.S. for ruining Shawn's life. In addition, G.S. reported her stepfather, Jeffrey, physically abused her as a young child when he was intoxicated. Malasondra denied these claims. In response to the sexual assault investigation, Malasondra told police officers G.S. made up stories. Malasondra told the social worker Shawn went to jail for drug use—not as a result of his sexual abuse convictions. The grandmother also admitted she knew Shawn was abusing drugs while caring for T.S. but she was not concerned about his parenting under the influence because other family members always stepped in to take care of her.

The social worker concluded:

> Malasondra's greater concern about her son, Shawn, the perpetrator of sexual abuse and the minimization of any impact or suffering by his victim, [G.S.], raises concerns. Her acknowledgment of a component of the abuse pattern in her home and the victim's report of attempting to tell her at the time also raise questions about her willingness to believe and protect a victim if she favors the perpetrator. These elements raise serious issues regarding the safety and empathy available to a child in relative placement. Even Malasondra's view that [T.S.'s] father was a good parent while he used drugs and relied on others to provide her care, calls into question how reliably she could limit involvement by those unsafe to this child.
>
> [Minnesota DHS] has been unable to fully explore the extent or impact of Jeffrey's alcohol use although as noted, it could be of concern.

Based on the totality of the above information, [Minnesota DHS] recommends denial of the home study.

In April 2017, Malasondra filed a motion in the CINA case, complaining the ICPC home study failed to include reports from several people with "key information" and made no effort to verify G.S.'s claims.[3]  Malasondra also offered a parenting assessment obtained from Deena McMahon, a family therapist hired by the grandparents.  In the assessment, Malasondra and Jeffrey maintained they were aware Shawn abused illegal drugs while caring for T.S.; continued to deny Shawn's sexual abuse of G.S.; and continued to criticize G.S. for lying or—if the reports were true—not speaking up sooner about the abuse.  But they also stated, if G.S. was molested, "they will support her in every way that can to get the care and services she needs."  They agreed neither Shawn nor G.S. would ever live with them if T.S. was placed with them.  McMahon spoke with several other references, who all gave positive reports.  McMahon concluded, "[T]he facts of this case do not support the opinion that Malasondra or Jeffrey have been or would be unsafe caregivers."

In October 2017, the juvenile court held a multi-day hearing to consider placing T.S. with her paternal grandparents.  In a November 2017 order, the court reviewed both the ICPC study and the McMahon assessment and declined to move T.S. from her current foster care placement.  In a January 2018 permanency order, the court opined: "None of the evidence presented to this Court is convincing

[3] The paternal grandparents provided the social worker with three references who gave positive feedback on the couple's ability to care for T.S.  The social worker also contacted Jeffrey's adult daughter who did not recall any abuse in the home and only recalled her father drinking at social events.

to prove Malasondra and Jeff would protect [T.S.] and keep her safe." The court decided placement with the paternal grandparents was not in T.S.'s best interests.[4]

After the State filed its petition to terminate parental rights, Malasondra again sought to intervene. The juvenile court did not hold a hearing but, in an April 2018 order, denied the grandmother's motion, reasoning it had already decided Malasondra was not an appropriate placement and intervention would not be in T.S.'s best interests. After the parents' rights were terminated, Malasondra again sought intervention, expressing her interest in adopting T.S. In November 2018, the court again denied the request to intervene, citing its findings from April 2018 and concluding "all of those facts remain relevant today." Malasondra appeals.

## II.    Discussion

We must decide if the juvenile court correctly denied the paternal grandmother's motion to intervene at the stage of the child-welfare proceedings governed by Iowa Code section 232.117(3) (2018).[5] That provision directs the juvenile court, after termination, to transfer guardianship and custody of a child to one of the following: (1) the DHS, (2) a child-placing agency, or (3) a non-custodial parent, other relative, or other suitable person. Iowa Code § 232.117(a)–(c).

We begin by examining the source of the right claimed. *H.N.B.*, 619 N.W.2d at 343. Iowa Rule of Civil Procedure 1.407 governs interventions:

> Upon timely application, anyone shall be permitted to intervene in an
> action under any of the following circumstances:

---

[4] Malasondra tried to appeal the permanency order but it was dismissed as an appeal from an order that was not final.

[5] The State does not challenge the timeliness of the intervention request. And rightly so— in *In re C.L.C.*, this court found a petition to intervene after termination of parental rights was timely because the termination did not "'finalize' the entire proceeding." 479 N.W.2d 340, 344 (Iowa Ct. App. 1991). Questions of guardianship and custody remained. *Id.*

. . . .

> b. When the applicant claims an interest relating to the . . . transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Iowa Code § 1.407(1)(b).

In termination cases, when considering the status of the proposed intervenor, "the focus must always include the welfare and best interests of the child," and the "intervention must be compatible with the best interests" of the child. *H.N.B.*, 619 N.W.2d at 344. We will not "elevate the grandparents' interests above . . . the interests of the child." *Id.*; c*f. In re B.B.M.*, 514 N.W.2d 425, 429 (Iowa 1994) (discussing intervention of grandparents under Iowa Code chapter 600A).

In late 2017 and early 2018, the juvenile court grappled with Malasondra's request to intervene and the appropriateness of placing T.S. in the home of her paternal grandparents. The court carefully sifted through the evidence—both positive and negative—regarding the grandparents' ability to nurture and protect T.S. The court reached a well-reasoned conclusion—given Malasondra's failure to recognize the harm caused by Shawn's sexual abuse of his sister occurring under her own roof—the grandmother did not have the "protective capacity" to keep T.S. safe. In April 2018, the court echoed the sentiment from its earlier orders to find the grandparents did not have a sufficient interest to intervene in the termination case. And in the November 2018 order—from which Malasondra appeals—the juvenile court referenced the April 2018 order and reasoned the factors preventing placement of T.S. "remain relevant today."

We find no error in the court's denial of Malasondra's petition to intervene. In child welfare proceedings, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). T.S.'s best interests preclude placement with Malasondra for the safety reasons highlighted in the ICPC home study and embraced by the juvenile court. Malasondra has not demonstrated the capacity or insight to shield T.S. from the possibility of a dangerous situation involving her son and his history of sexual abuse and substance abuse. To the extent the McMahon parenting assessment quells those concerns, we find the positive views of Malasondra's caregiving are undermined by her continued minimization of Shawn's sexual abuse of G.S. and his drug abuse. We also defer to the court's perceptions regarding the credibility of Malasondra's recent change of heart regarding Shawn's sexual abuse. The court did not err in finding placement with Malasondra would not be in T.S.'s best interests.

On appeal, Malasondra emphasizes—without citation to the record—her participation in therapy "to learn to cope with the fact that her daughter was sexually assaulted by her son." But we are more persuaded by the evidence that since termination, Malasondra has not complied with DHS expectations for her behavior toward T.S. The grandmother bought gifts for the child against the worker's advice, demanded visitation despite no longer being an intervenor, and repeatedly interfered with the foster family's wishes. In fact, Malasondra's disruption of the foster family's home life prompted those foster parents to rethink their intent to adopt T.S. Malasondra's conduct following denial of her motions to

intervene show she is not acting consistent with T.S.'s best interests. Accordingly, she did not have a sufficient interest in the section 232.117 proceedings to intervene. *See H.N.B.*, 619 N.W.2d at 345 (finding potential intervenors who were not suitable caretakers did not have a legal right directly affected by the litigation as required by the rule of civil procedure).

Further, in *In re K.R.*, No. 06-1592, 2006 WL 3615040, at *2 (Iowa Ct. App. Dec. 13, 2006), this court concluded a former guardian no longer had an interest in the proceedings when the juvenile court previously determined the child would be at risk of harm in her care. Because the court already adjudicated the issue and decided placement with the former guardian was "[in]compatible with the child's best interest[s]," intervention in the juvenile court proceedings was unnecessary. *K.R.*, 2006 WL 3615040, at *2. A similar sequence of decisions occurred here. The juvenile court decided in late 2017 and early 2018 that Malasondra was not a safe placement option for T.S. Thus, Malasondra had no legal interest to protect that required her intervention at any stage of the termination proceedings. Accordingly, we affirm.

**AFFIRMED.**