**IN THE COURT OF APPEALS OF IOWA**

No. 21-0044
Filed July 21, 2021

**IN THE INTEREST OF S.C.,**
**Minor Child,**

**J.C. and A.C.,**
        Appellants.
_____

        Appeal from the Iowa District Court for Dallas County, Monty W. Franklin,

District Associate Judge.


        J.C. and A.C., former foster parents to the child, S.C., appeal the denial of

their motions to intervene and to set aside an order modifying placement of S.C.

**AFFIRMED.**


        Debra Hockett-Clark, West Des Moines, for appellants.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General.

        Kayla Stratton of Juvenile Public Defender, Des Moines, attorney and

guardian ad litem for minor child.


        Considered by Mullins, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

J.C. and A.C., former foster parents of S.C., appeal the denial of their motion to intervene in post-termination proceedings and the denial of their motion to set aside an order modifying placement of S.C. They also argue the juvenile court erred in denying their request to remove the Iowa Department of Human Services (IDHS) as S.C.'s guardian.

**I. Facts and Earlier Proceedings.**

S.C. was born in 2015. Her biological parents' parental rights were terminated in an earlier proceeding because she suffered abuse and significant trauma at the hands of her birth mother. S.C. was adopted but ultimately removed and adjudicated a child in need of assistance in February 2019, after she suffered rejection and abuse, this time from her adoptive parents. IDHS assumed care and guardianship of S.C. after removal from her adoptive parents. Her adoptive parents consented to termination; their parental rights were terminated in April 2020. *See* Iowa Code § 232.116(1)(a) (2020). Pursuant to the April termination order, S.C. remained in the guardianship and custody of IDHS.

Between removal and termination, IDHS placed S.C., then three years old, with J.C. and A.C. in March 2019. A.C. is the sister of S.C.'s biological mother, whose rights were terminated.[1] The foster family and S.C. lived in Iowa at first, but they relocated to Colorado with IDHS approval in September. IDHS worked with their Colorado equivalent (CDHS) and the foster family to begin the pre-adoption process.

---

[1] Thus, A.C. is not considered a relative placement with this foster family. *See In re C.L.C.*, 479 N.W.2d 340, 343 (Iowa Ct. App. 1991).

A CDHS caseworker was assigned to the family in December 2019, and soon after A.C. and J.C. independently engaged an in-home therapist. In January 2020, the caseworker became concerned the family, and A.C. in particular, were "overwhelmed" and not meeting the child's emotional needs. Because of the abuse and trauma she previously experienced, S.C. suffers from significant emotional and behavioral issues. The caseworker and therapist identified S.C.'s delayed social and emotional development, as well as difficulty attaching to adult caregivers. S.C. needed extra attention, physical affection, comfort, and patience from her caregivers to help process trauma. The therapist reported the foster parents were hesitant to adopt recommendations and were more interested in "techniques that curve [S.C.'s] challenging behaviors rather than true trauma processing." She also observed that J.C. and A.C. struggle to manage S.C.'s behavioral issues and express frustration with the child's outbursts. Based on communications with the CDHS, IDHS determined J.C. and A.C. were raising S.C. without considering her special needs and were unwilling and unable to address her particular issues.

The adoption home study and report,[2] authorized by CDHS, painted a starkly different picture. The study consisted of videoconference visits, individual interviews, and an in-person session with S.C. The social worker conducting the home study indicated S.C. had a "positive relationship" with all members of her foster family and did not identify concerns with J.C. and A.C.'s parenting. She told

---

[2] The adoption home study began in April 2020, and the written report was completed on May 15, shortly before S.C. was removed from the former foster parent's custody.

the CDHS caseworker that she planned to approve the foster family for adoption, and she did not share the caseworker's concerns about the family or S.C.'s attachment issues. After completing the twenty-page adoption study, the social worker recommended the foster family for adoption.

In June 2020, the State filed a motion to modify placement, seeking to remove S.C. from A.C. and J.C. and return her to Iowa. The juvenile court approved the motion, finding continued placement with J.C. and A.C. was not in S.C.'s best interest. S.C. was transported back to Iowa under the custody and guardianship of IDHS.[3] Upon her return, she was placed in family foster care and remains there. She is receiving mental-health treatment and other services and, according to the juvenile court "appears to have adjusted extremely well to her current placement and her foster family." Soon after, A.C. and J.C. moved to intervene and to set aside the placement order. They also requested the juvenile court remove IDHS as S.C.'s guardian. Their motions were denied in all respects, and they appeal.

**II. Standard of Review and Error Preservation.**

"We review the denial of a motion to intervene for correction of errors at law." *In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997). Although we review for error, some discretion is vested in the juvenile court to determine whether the petitioner is sufficiently "interested" in the litigation to permit intervention. *In re H.N.B.*, 619 N.W.2d 340, 344 (Iowa 2000).

---

[3] DHS has maintained legal custody of S.C. at all times since termination of the adoptive parents' rights.

"We review de novo actions seeking to remove [IDHS] as guardian and challenging custody placements." *In re S.O.*, No. 13-0740, 2013 WL 3458216, at *1 (Iowa Ct. App. July 10, 2013). "In doing so, we review the facts and law and adjudicate rights anew, but we give weight to the findings of fact of the juvenile court." *In re N.M.*, No. 20-0898, 2020 WL 5946108, at *2 (Iowa Ct. App. Oct. 7, 2020).

The State does not contest error preservation.

## III. Analysis.

### A. Did the Juvenile Court Err in Denying the Motion to Intervene?

Foster parents can be "suitable persons" for custody, which might allow them to intervene to be considered for placement of a child under section 232.102(1)(a)(1). *See In re E.F.*, No.19-2141, 2020 WL 1881096, at *1 (Iowa Ct. App. April 15, 2020). Here, the juvenile court denied the motion to intervene after S.C. was removed from the custody of J.C. and A.C. Yet, these former foster parents believe the juvenile court should have allowed them to intervene in the placement process. Iowa Rule of Civil Procedure 1.407(1)(b) provides that if a statute does not confer an unconditional right to intervene, an applicant may intervene if they

> claim[] an interest relating to . . . the transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

This criteria applies to post-termination proceedings. *See In re N.S.*, No. 08-0034, 2008 WL 2039627, at *1 (Iowa Ct. App. May, 14, 2008).

6

The juvenile court denied the motion to intervene on two grounds. First, the juvenile court focused on the "welfare and best interests of the child" and if the intervention was compatible with those best interests. *See H.N.B.*, 619 N.W.2d at 344. Second, the juvenile court found J.C. and A.C. did not have a sufficient interest in the litigation to allow them to intervene. *Id.* at 345.

We start with the analysis of whether the former foster parents have "an interest." In assessing the "interest" for purposes of intervening, we examine whether the applicant has asserted a legal right. *N.S.*, 2008 WL 2039627, at *1 (citing *H.N.B.*, 619 N.W.2d at 343). A foster parent has "a statutory avenue to intervene if their interest is sufficient enough to rise to the level of a "suitable person" for the purpose of appointment as custodian and guardian following the termination." *H.N.B.*, 619 N.W.2d at 343 (noting that sufficiency of the intervenor's interest requires consideration of the surrounding facts and circumstances with a focus on the child's best interests). J.C. and A.C. point to their interest in adopting S.C., which included a fifteen-month placement; the favorable adoption study in Colorado, and their family's close bond with the child. But "the mere interest or desire to adopt a child will not qualify as a sufficient interest." *Id.* (citing *In re B.B.M.*, 514 N.W.2d 425, 427 (Iowa 1994)). "An indirect, speculative, or remote interest will not provide . . . a right to intervene." *Id.* J.C. and A.C. argue their interests meet the standard required.

The juvenile court addressed the interest by noting:

> In addition to finding that the requested intervention would not be in [the child's] best interest, the Court finds that [the foster parents] do not have sufficient interest in this litigation and proceeding to allow them to intervene. When the Court has adjudicated the issue of placement of the child and decided that placement with the proposed

intervenor was " . . . [in]compatible with the child's best interest[s] . . . ," intervention in the juvenile court proceedings was unnecessary. As the [the foster parents] do not have the required sufficient "interest" in the proceedings concerning [the child] and do not have a legal right directly affected by the proceedings concerning [the child], their request to intervene should be denied.

(third and fourth alteration and ellipsis in original) (citations omitted).

But, unlike *H.N.B.*, here, the former foster parents had recent contact with the child and had an adoption study confirming, at least in one social worker's view, a close relationship with the child. *See* 619 N.W.2d at 344 (noting factual basis for interest asserted by intervenors did not include a relationship with one of the children and more than two years had passed since offering foster care for the other child). Likewise, upon removal of the child, J.C. and A.C. immediately moved to intervene. *Id.* (finding another factor against intervention was the delay of filing the application over two years from removal of the child). Under these facts, we find J.C. and A.C. would have a sufficient interest to intervene if those were the only considerations, but we next address if intervention is in the child's best interests.

"In termination cases, when considering the status of the proposed intervenor, 'the focus must always include the welfare and best interests of the child,' and 'the intervention must be compatible with the best interests' of the child." *In re T.S.*, No. 18-2080, 2019 WL 719176, at *3 (Iowa Ct. App. Feb. 20, 2019) (quoting *H.N.B.*, 619 N.W.2d at 344)). The juvenile court found allowing J.C. and A.C. to intervene was not in S.C.'s best interest due to the shared concerns of IDHS and CDHS that the former foster parents were unwilling to tend to her unique needs. Additionally, the juvenile court found intervention would delay permanency

for S.C., resulting in "uncertainty and confusion for [S.C.] concerning her future and her being provided with a forever family and home." This last point is a valid concern. *See In re E.G.*, 738 N.W.2d 653, 656 (Iowa Ct. App. 2007) (finding juvenile courts should be reluctant to grant intervention if it will delay a child's adoption and chance for permanency). Given the juvenile court's reasons, we find no error in the denial of the intervention request. Intervention must be "compatible" with the child's best interests. *H.N.B.*, 619 N.W.2d at 344. Under the discretion afforded the juvenile court, we find granting the motion to intervene by J.C. and A.C. would not be in the best interests of the child.

**B. Did the Juvenile Court Err in Declining to Set Aside the Order Modifying Placement or Remove IDHS as Guardian?**

J.C. and A.C. argue the juvenile court should have set aside the order removing S.C. from their custody, and that IDHS should have been removed as S.C.'s guardian. Once guardianship was transferred to IDHS, it is not the juvenile court's place to select a particular physical placement of the child; that is a statutory role for IDHS. *In re L.B.*, No. 18-1165, 2018 WL 4361066, at *2 (Iowa Ct. App. Sept. 12, 2018). But the juvenile court can remove IDHS as a guardian of the child "upon application of an interested party or upon the court's own motion . . ." Iowa Code § 232.118(1).

The juvenile court denied the motion to intervene, finding J.C. and A.C. did not have a sufficient interest and intervention was not in the best interest of the child. We agree, thus A.C. and J.C. are not an "interested party" under Iowa Code section 232.118(1). And even if we addressed this claim, we do not see evidence that IDHS "in any way failed in its guardianship duties or in looking out for [the

child's] best interests." *E.G.*, 745 N.W.2d at 744; *accord S.O.*, 2013 WL 3458216, at *2 ("The juvenile court retains the authority to remove IDHS as guardian if the department acts unreasonably or irresponsibly in discharging its duties."). Given the issues identified by CDHS and IDHS, it was not "unreasonable or irresponsible" to decide removal was preferable to continued placement with the former foster parents. This goes to the prerogative of IDHS to select an appropriate placement. *See In re R.S.*, No. 15-1244, 2015 WL 5578273, at *1 (Iowa Ct. App. Sept. 23, 2015) (noting IDHS does not have a statutory duty "to preserve a pre-adoptive foster care placement following removal of the child from the placement"). We decline to remove IDHS as guardian at the former foster parents' request.

## IV. Conclusion.

We affirm the denial of J.C. and A.C.'s motion to intervene, as well as their requests to set aside the order modifying placement and remove IDHS as guardian.

**AFFIRMED.**