**IN THE COURT OF APPEALS OF IOWA**

No. 24-2071
Filed March 19, 2025

**IN THE INTEREST OF J.L.,**
**Minor Child,**

**J.C., Intervenor,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Erik Howe, Judge.

A party appeals the denial of her motion to intervene. **REVERSED AND REMANDED**.

J.C., Indianapolis, Indiana, self-represented appellant.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Langholz and Sandy, JJ.

**GREER, Presiding Judge.**

J.C. maintains she is the "fictive kin" of J.L., born in 2022. Because of her connections with the child, J.C. moved to intervene in a child-in-need-of-assistance (CINA) case involving J.L. After a December 2024 hearing, the juvenile court denied the motion, which J.C. challenges on appeal. At this CINA stage of these proceedings, we agree that J.C. has a right to intervene and the juvenile court erred by denying the motion. We reverse the juvenile court's ruling.

**I. Background Facts and Proceedings.**

Three months after J.L. was born in Iowa, the child's mother transported J.L. to Indiana, where the child lived with a non-relative, J.C., for approximately five months—from October 2023 until March 2024. In November 2023, the Iowa Department of Health and Human Services (the department) asked the juvenile court to schedule a removal hearing to determine whether J.L. should be removed from the mother's custody, noting allegations the mother was unsafe and had "sent [J.L.] to the state of Indiana with a random person unknown to the child." Following a formal removal and CINA adjudication hearing, on March 5, 2024, the juvenile court removed custody of the child from the mother and transferred custody to the department for purposes of placement in foster care; the court also adjudicated J.L. a CINA. The child was transported back to Iowa and initially placed with in-state foster parents and then, shortly after, with a paternal aunt.

On March 12, J.C. filed a pro se motion to intervene in the CINA case. The next day the juvenile court issued an order that the motion to intervene would be heard at the disposition hearing. By June, the guardian ad litem (GAL) noted in her report that the child should have no contact with J.C. Then, at an August

dispositional hearing, the juvenile court stated that J.C. could not "be approved [for a placement option] at this time as [J.C.] is out of state." Yet, later, with the assistance of counsel, J.C. filed another motion to intervene on December 2, 2024. One week later, following a hearing specifically on the motion to intervene, in which J.C. participated and was represented by counsel, the juvenile court denied J.C.'s motion.

J.C. appeals the denial of her motion to intervene.

## II. Standard of Review.

"We review the denial of a motion to intervene for correction of errors at law." *In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997). "However, even though review is on error, the trial court is accorded a certain amount of discretion to deny intervention in proper cases." *In re B.B.M.*, 514 N.W.2d 425, 426 (Iowa 1994).

## III. Motion to Dismiss.

On appeal, J.C. initially raised as her first issue: "Intervention of right— 1.407" and "not adequately represented by any party at the December 10th hearing." In response, the State filed a motion to dismiss the appeal under Iowa Rule of Appellate Procedure 6.1006(1)(a)(1), which allows the appellee to file a motion to dismiss when "the appellant's filing of a document . . . fails to substantially comply with the appellate rules or a court order, or an allegation that the appropriate appellate court lacks jurisdiction or authority to address the case."[1] There was no further development of the first issue, although after amending the

---

[1] By order dated February 5, 2025, the supreme court directed the motion to dismiss be submitted along with the appeal.

petition, J.C. added three case citations as supporting legal authority and some additional facts. The revised application stated:

> Parent of sibling is considered a Relative for placement Iowa Code 232.108 J.C intervenor is the grandparent and gaurdian of J.F. sister of J.L. for 12 yrs and considers J.L her grandaughter motioned to Intervene 4 days after removal from her care
>
> J.L. was in the care of J.C from October 14th of 2023 to March 5th 2024
>
> J.C is a suitable placement with an approved homestudy 232.102

Finding the amendment provides the bare bones facts and legal support for this appeal to proceed, we deny the State's motion to dismiss and address the merits of J.C.'s appeal.

**IV. Motion to Intervene.**

Iowa Rule of Civil Procedure 1.407 controls the right to intervene in a CINA action.[2] On appeal, J.C. argues she should have been allowed to intervene as a matter of right under rule 1.407(1)(b) which provides that the person asking to intervene:

> shall be permitted . . . [w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

One is "interested" within the meaning of rule 1.407(1)(b) "if one has a legal right that the proceeding will directly affect." *B.B.M.*, 514 N.W.2d at 427. When an individual has a legal right to intervene by fulfilling "the prerequisites of [rule 1.407(1)]," the juvenile court does not have discretion to deny intervention.

---

[2] While "[t]he rules of civil procedure do not automatically apply to juvenile proceedings," *A.G.*, 558 N.W.2d at 402, we have repeatedly considered rule 1.407 with motions to intervene in CINA and termination proceedings.

*A.G.*, 558 N.W.2d at 403. "Rather, this discretion is to be exercised on the question of whether [a would-be] intervenor is 'interested' in the litigation." *Id.*

Here, J.C. moved to intervene in the child-welfare case during the ongoing CINA proceedings. In Iowa Code section 232.102(1)(a) (2024), the legislature extended certain categories of individuals a "legal right" to be considered for custody in the CINA proceeding. *See A.G.*, 558 N.W.2d at 404 (recognizing that individuals who fall within one of the statutory categories have a "legal right" to be considered for guardianship and custody). Section 232.102(1)(a) reads:

> After a dispositional hearing, the court may enter an order transferring the legal custody of the child to a parent of the child. If the court finds that custody with either of the child's parents is not in the child's best interests, the child's custody shall be transferred to the department for placement of the child in any of the following categories in the following order of priority:
> (1) An adult relative of the child . . . .
> (2) A fictive kin.
> (3) Any other suitable placement identified by the child's relatives.

When an individual has a legal right to be considered for custody, they have "a legal right that the [CINA] proceeding will directly affect." *B.B.M.*, 514 N.W.2d at 427. In other words, having a legal right to be considered for custody makes one an interested party for the purposes for rule 1.407. The question, then, is whether J.C. fits into any of the enumerated categories of individuals with the legal right to be considered for custody.

In her juvenile court papers and at the intervention hearing, J.C. argued that she was "fictive kin" or an "other suitable placement" under the statute. Among other evidence supporting intervention, she highlighted her "emotionally positive and significant relationship with not only [J.L.], but also [both] her parents" and

J.L.'s half-sibling. We understand her petition on appeal to essentially make those same arguments. She also mentions in passing that she "considers J.L. her grand[d]aughter," but J.C. does not qualify as "relative" under the statutory framework.[3]

The juvenile court summarily rejected J.C.'s fictive-kin argument, reasoning that "[t]he only interest that [J.C.] might have in proceedings is as placement as a suitable other." And then, applying cases interpreting requests to intervene by potential other suitable placements and grandparents, the court found that J.C. had an insufficient interest in the proceeding to warrant intervention. *See In re H.N.B.*, 619 N.W.2d 340, 343–45 (Iowa 2000) (affirming denial of former foster parents' request to intervene as "other suitable person" for guardianship after termination); *A.G.*, 558 N.W.2d at 404–05 (reversing denial of motion to intervene by grandparent as a "relative" at dispositional phase of CINA proceeding).

On our de novo review, we conclude that the juvenile court erred in summarily rejecting J.C.'s argument that she is fictive kin and thus do not consider whether she would satisfy the standard for an "other suitable placement." Fictive kin is defined as "an adult person who is not a relative of a child but who has an emotionally positive significant relationship with the child or the child's family." Iowa Code § 232.2(22). This statute sets a clear, defined legal standard distinct from the "flexible" standard applied by our courts interpreting the "undefined" terms

---

[3] As defined by Iowa Code section 232.2(56):

> "Relative" means an individual related to a child within the fourth degree of consanguinity or affinity, by marriage, or through adoption. For purposes of subchapters III and IV, "relative" includes the parent of a sibling of the child if the sibling's parent's parental rights were not previously terminated in relation to the child.

"suitable person" and "relative" in the cases relied on by the juvenile court. *H.N.B.*, 619 N.W.2d at 344; *see also A.G.*, 558 N.W.2d at 404 (reasoning that a trial court similarly has discretion "in deciding who is a 'relative'" because the term "could conceivably be so broadly defined that any person with any genealogical connection to the child could intervene").[4] So we must apply the statutory standard for fictive kin.

Based on J.C.'s testimony at the hearing on her motion to intervene, J.C. has a strong, positive relationship with S.R., the child's father. She reports she has known S.R. for "twelve years, [thirteen] maybe" and talks to S.R., "every day, sometimes twice a day." She is the grandmother of and currently has guardianship of R.L., the half-sibling to J.L and S.R.'s child. Additionally, J.C. took care of J.L. for several months when the child was a newborn. She attempted to stay connected with the child and cooperated with a home study under the Interstate Compact on the Placement of Children to show her interest in serving as a possible placement for the child in Indiana. Taken together, we find J.C. qualifies as fictive kin; she has a clear, emotionally positive relationship with the child's father, has a significant custodial relationship with J.L.'s half-sibling and has attempted to maintain a positive relationship with the young child from several states away.

J.C.'s attempts to intervene in the CINA matter appear to have met resistance from the department,[5] but because J.C. meets the criteria found in the

---

[4] At the time of *A.G.*, the current statutory definition of "relative"—quoted above in footnote three—had not yet been enacted, leaving the term undefined. *See* Iowa Code §§ 232.2, 232.102(1)(a) (1995).

[5] J.C. offered a June 2024 email communication between J.L.'s mother and the GAL in which the GAL told the mother, "I want to be 100% clear with you that [the department social worker] and I will not ever support [J.L.] being placed with [J.C.]"

statute, it was error to deny J.C. the right to intervene at the CINA stage. We reverse the juvenile court's denial of the motion to intervene and remand.

**REVERSED AND REMANDED.**