**In the Interest of C.L.C. and A.M.B., Children.**

**S.A.B. and M.D.B., Husband and Wife, Appellants.**

**No. 91–543.**

Court of Appeals of Iowa.

Oct. 29, 1991.

Daniel L. Bray, Iowa City, for appellants (proposed intervenors).

Bonnie J. Campbell, Atty. Gen., John M. Parmeter and Charles Phillips, Asst. Attys. Gen., for appellee State.

Davis L. Foster of Barker, Cruise, Kennedy, Houghton & Foster, Iowa City, guardian ad litem for the children.

Heard by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

OXBERGER, Chief Judge.

This case involves two children, a boy born in May 1987 and a girl born in March 1989. The two children have the same natural mother but different natural fathers. In 1990 the parental rights of all natural parents were terminated in two separate orders. The termination orders are not challenged here.

In July 1989, well before the termination orders, both children were placed in the foster home of Pam Thodos. They have remained in the Thodos home since that time.

While in the Thodos foster home, the children developed a relationship with Pam Thodos' daughter Mia Bartels and Mia's husband Scott Bartels. Mia and Scott Bartels have babysat the children for an average of ten to fifteen hours per week. They have taken the children to medical appointments, have given them birthday presents, and have allegedly contributed over $5,000 in financial support to the children.

As a result of their contacts with the children, Mia and Scott Bartels have formed a desire to adopt them.

On January 4, 1991, three weeks after the second termination order, Mia and Scott Bartels filed a petition to intervene in the existing juvenile court proceeding. They sought intervention to promote their plan to apply for adoption. They asserted they wanted to intervene so they could seek to be appointed guardians and so they could participate in the determination of a permanency case plan.

After a hearing, the juvenile court denied the Bartels' petition to intervene. The juvenile court found the Bartels would probably be qualified to intervene if their petition to do so had been timely. However, the juvenile court concluded the petition to intervene was untimely because it was not filed prior to judgment, that is, prior to the termination of parental rights.

Mia and Scott Bartels have appealed from the juvenile court order denying their petition to intervene.

The Bartels argue they are persons interested in the guardianship and placement of the children and are therefore entitled to intervene under Iowa Rule of Civil Procedure 75 (Rule 75 provides that "any person interested in the subject matter of the litigation" may intervene). As indicated above, it is not clear that the juvenile court disagreed with the Bartels on this point.

The Bartels next contend their petition to intervene should be deemed timely. Even though parental rights had already been terminated prior to their petition, they argue further juvenile court action was contemplated and the juvenile court proceeding was therefore not finalized so as to preclude intervention. They also argue that timeliness requirements for intervention should be liberally interpreted rather

than strictly enforced in a juvenile proceeding where the best interests of the children are paramount. In addition, they assert they should not be penalized for the filing date of their intervention petition because they relied on the advice of a social worker; the social worker allegedly told them they should not intervene until after the natural parents' rights had been terminated.

Finally, the Bartels argue their intervention would be in the best interests of the children because they have functioned as the children's "de facto psychological parents."

The State has filed an appellee's brief supporting the juvenile court's order. The guardian ad litem for the children has filed an additional "appellee's brief" arguing that the Bartels should be permitted to intervene but should be denied access to information on other possible adoptive parents.

 Our review in cases such as these is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

*PERSONS ENTITLED TO INTERVENTION:* We first consider whether the Bartels are persons entitled to intervene in this case.

 The Bartels assert they should have been identified as necessary parties in this juvenile proceeding. Whether parties are "necessary parties" however, is not determinative of the intervention issue. See *In re J.R. & S.R.,* 315 N.W.2d 750, 752 (Iowa 1982). The test of the right to intervene is "interest", not necessity. *Id.* One interested in an action is one who is interested in the outcome or result thereof because he or she has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or

diminished by the judgment or decree therein. *Id.* In *In re J.R.,* the supreme court held that the grandparents of a child had standing to intervene in proceedings to terminate the parental rights of the child's natural parents. Its reasoning was based upon the legal rights created in section 232.117(3) and section 600A.9(1) which placed a duty on the juvenile court to consider "relatives" as guardian and custodian of the child. See *Id.* at 752. Section 232.-117(3)(c) reads in relevant part;

> If the court terminates the parental rights of the child's natural or adoptive parents, the court *shall transfer the guardianship and custody of the child to one of the following:*
>
> .　　.　　.　　.　　.
>
> c. A relative or *other suitable person.* (emphasis added).

Scott and Mia argue they are "suitable persons" who are not excluded as possible guardians and custodians under section 232.117(3) and section 600A.9(1). Section 600A.9(1) provides in relevant part:

> Subsequent to the hearing on termination of parental rights under this chapter, the juvenile court shall make a finding of facts and shall:
>
> a. Order the petition dismissed; or,
>
> b. Order the petition granted. The juvenile court *shall appoint a guardian and a custodian or a guardian* only. (emphasis added).

 The State argues the Bartels have no legal right to be chosen as the children's adoptive parents. The Bartels however do not make a claim to right of adoption but rather their right to be considered as guardians and custodians of the children prior to adoption. Relying upon the reasoning found in the case of *In re J.R.,* this court finds that persons qualifying as "suitable persons" at the time of the courts determination under sections 232.117(3) and 600A.9(1) have a legal right to be considered as guardians and custodians of children following the termination of the parental rights.

We next consider whether the Bartels are "suitable persons" as contemplated by

section 232.117(3). Our research revealed no precedent in case law nor statutory definition regarding the criteria in making such a determination. The State argues "suitability" should be determined by the Iowa Department of Human Services. We disagree. Although section 600A.9(1) does not specify the time allowed between the termination of parental rights and the court's duty to appoint a guardian and custodian, it is clear the legislature did not intend any delay.

■ We find therefore in a proceeding under section 600A.9(1) in which the court appoints a guardian and a custodian or a guardian only, the juvenile court is charged with the responsibility to exercise its discretion in determining "suitable persons" as contemplated by section 232.117(3).

The State argues this category of "suitable persons" should be narrowly interpreted so as not to include every nonrelated person that expresses an interest in adopting a child. The State argues that were the desire to adopt the only criteria relied upon by the court in determining suitability, the court could be faced with innumerable intervenors. We agree. It is not however, within the realm of this court's vision to provide an all encompassing definition for "suitable persons." We find the intent of our legislators was to defer the determination of who are "suitable persons" under section 232.117(3) to the juvenile courts. Had they desired to provide a definition they would have done so.

In this light the trial court stated:

The Court believes that, based on the relationship between the Bartels and the children, they may well qualify as interested persons and be eligible to intervene. The Court may even be able to fashion protective orders to protect the confidentiality of other prospective parents from being violated with the Bartels in the case.

However, the Court concludes ... it is absolutely essential that any party wishing to intervene must do so in a timely fashion in termination of parental rights proceedings.

■ It is clear the court did not have difficulty with the qualification of the Bartels as interested persons. For nearly two years, Scott and Mia have established a family relationship with the children. They have spent time with the children through the week and on weekends. They have taken the children to medical appointments, given birthday presents and provided financial support in excess of $5,000. This couple has been involved in the routine care of these children, and the children have come to rely upon their love and care. Based upon our de novo review, we find the Bartels are sufficiently "interested in the subject matter" of this juvenile proceeding so as to have a right to intervene under Iowa R.Civ.P. 75.

■ *TIMELINESS OF INTERVENTION:* We next consider whether the Bartels' petition to intervene in this juvenile proceeding was untimely. The Bartels assert timeliness of the petition should be considered in light of the nature of the proceedings and how far the proceedings have gone. They argue the proper focus should be on the entire provisions of Iowa Code chapter 232 regarding termination of parental rights and placement of the children. It is their contention that the fact parental rights have been terminated does not "finalize" the entire proceeding. We agree. The central focus of this juvenile proceeding is a determination of the best interests of the children. *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981). The Bartels are seeking to intervene at a point in the juvenile court proceedings at which the court has not yet begun trial on the permanency plan for these children.

Iowa R.Civ.P. 75 provides:

Any person interested in the subject matter of the litigation, or the success of either party to the action, or against both parties, may intervene at any time *before trial begins,* by joining plaintiff or defendant or claiming adversely to both. (emphasis added).

The Bartels never desired to intervene on the issue of whether to terminate the parental rights of the children's natural parents. Rather, they seek to be heard on the

issue of guardianship and custody of the children. The fact that temporary placement of the child should be done as near contemporaneously as possible to the time in which the parental rights are terminated does not transform a proceeding to terminate parental rights into a final judgment on the matter of guardianship and custody. We find the complete difference in nature of these issues requires this court to consider the determination of each as two separate proceedings.

In determining the petition was untimely, the court discussed section 232.118(1). That section provides:

Upon application of an interested party or upon the court's own motion, the court having jurisdiction of the child may, after notice to the parties and a hearing, remove a court appointed guardian and appoint a guardian in accordance with the provisions of section 232.117(3).

The court stated:

The Court does not believe that the legislature's leaving with the Court the responsibility to monitor a case to ensure that a permanent placement is made for the child includes the ability of strangers to the case to attempt to intervene after the initial dispositional placement is made.

■ The court went on to assert it believed the phrase "interested party" in section 232.118(1) was limited to those persons who are properly parties or have already properly intervened in the termination proceedings. We find nothing in the statute to support such limitation. Further, we interpret section 232.118 in light of the overall principle of chapter 232 to seek the best interests of the child. In that light, we find the responsibility of the court under this section is not solely to ensure that a permanent placement is made for the child, but also to ensure the best interests of the child are not compromised. In order to protect the child, the legislature has provided that "an interested party" may apply to the court *while the court has jurisdiction over the child* to remove a court appointed guardian and appoint another guardian in accordance with the provision of section 232.117(3). Clearly, the court has jurisdiction over the child at this time. The timeliness of the Bartels' petition is therefore measured by the advent of those proceedings to which they have expressed a desire to be heard. We find the Bartels' petition to intervene prior to the proceedings on the permanency plan for these children to be timely. We reverse the trial court.

Each party will pay its own attorney fees. Costs are taxed to the State.

REVERSED AND REMANDED.