**IN THE COURT OF APPEALS OF IOWA**

No. 20-0141
Filed June 3, 2020

**IN THE INTEREST OF A.E.,**
**Minor Child,**

**A.M., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A biological father, whose parental rights were previously terminated, challenges the denial of his motion to intervene in a child-in-need-of-assistance action. **AFFIRMED.**

Jacob van Cleaf of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

Deborah L. Johnson of Deborah L. Johnson Law Office PC, Altoona, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

This case involves the denial of a motion to intervene in a child-welfare case. In an unusual turn, the unsuccessful intervenor, Arthur, is the eleven-year-old child's biological father. Arthur voluntarily terminated his parental rights when his daughter, A.E., was an infant. Yet Arthur maintained contact with A.E. through her childhood, including somewhat regular visitation, with the consent of her mother.

In October 2017, the Iowa Department of Human Services (DHS) removed A.E. from her mother's care. Two years later, Arthur sought to intervene in the child-in-need-of-assistance (CINA) proceedings under Iowa Code section 232.91(2) (2019) and Iowa Rule of Civil Procedure 1.407. In briefing, Arthur alleged he was interested in being considered a "suitable person" under section 232.117(3)(c).[1]

The juvenile court denied his motion. The court emphasized Arthur had not "consistently been involved in his biological daughter's life—including no contact within the last year." The court ruled intervention was not in A.E.'s best interest, citing her current placement with relatives, including her sibling, her need for permanency, and Arthur's inconsistent contact.

Arthur now appeals, faulting the juvenile court for evaluating his interest as that of a parent, though he did not claim a parental interest. On our review, framing

---

[1] That provision directs the juvenile court, after termination, to transfer guardianship and custody of the child to one of the following: (1) the DHS, (2) a child-placing agency, or (3) a non-custodial parent, other relative, or other suitable person. *See* Iowa Code § 232.117(3)(a)–(c).

Arthur's interest as an "other suitable person" with whom A.E. could be placed, we find no error in the juvenile court's denial of the motion to intervene.[2]

Rule 1.407(1) sets out when a person can intervene in an action:

> a. When a statute confers an unconditional right to intervene.[3]
> b. When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

A proposed intervenor has an "interest" if the legal proceeding will affect a legal right. *In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997). "An interest that is indirect, remote or conjectural is generally insufficient to support intervention." *Id.* "[T]he mere interest or desire to adopt a child will not qualify as a sufficient interest." *H.N.B.*, 619 N.W.2d at 343.

A bit of background is necessary to our analysis. A.E. was born in 2008. Arthur voluntarily terminated his parental rights when she was six months old, noting his lack of financial resources. He did not see her again until her third birthday. For a few years, he had regular visits with A.E. with the assent of her mother. At the hearing on his motion, he testified he saw A.E. "[t]hree or four" days

---

[2] In most child-welfare appeals, our review is de novo—looking at the facts and law anew. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). But we review the juvenile court's denial of a motion to intervene for the correction of legal error. *In re H.N.B.*, 619 N.W.2d 340, 342–43 (Iowa 2000). Although our review is on error, we accord discretion to the juvenile court's determination whether the person seeking to intervene is "interested" in the matter being litigated. *Id.* We focus on the child's welfare; the ultimate decision "must be compatible with the child's best interests." *Id.* at 344.

[3] No unconditional right exists under the circumstances of this case; Arthur does not claim such a right.

each week anywhere from thirty minutes to "all day plus overnight." But Arthur largely lost contact when the DHS removed A.E. from her mother's care in October 2017. He testified that after the removal he spoke with A.E. on the phone once a week. Even those weekly calls stopped in July 2019.

Despite their waning interaction, Arthur still bases his motion to intervene on his "close, ongoing relationship with A.E." He urges that he qualifies as an "other suitable person" to be considered a placement for A.E.

The juvenile court may transfer custody to a "suitable person" after a dispositional hearing. Iowa Code § 232.102(1)(a). Our legislature did not define the term "suitable person." *In re J.C.*, 857 N.W.2d 495, 508 (Iowa 2014). In that vacuum, courts have given the term a "flexible" meaning, leaning on the particular facts of each intervention petition. *Id.* "The sufficiency of the interest asserted by the intervenor under the 'suitable person' provision is considered in light of the nature of the proceeding and surrounding facts and circumstances." *H.N.B.*, 619 N.W.2d at 343. "[T]he closeness of the relationship between the child in interest and the intervenor is a critical factor in determining the sufficiency of the interest of an intervenor." *Id.* at 344.

The juvenile court correctly found insufficient support for Arthur's claim that the strength of his relationship with A.E. secured his interest in intervening. Arthur knew in 2017 that A.E.'s CINA case was opened. He could have pursued a placement or guardianship at any point. Yet he did not seek to intervene until 2019. The record shows Arthur has not seen A.E. for two years and stopped calling her six months before the hearing. Those gaps in contact undermine his

claim that their close relationship qualifies him as a suitable person to assume her care.

What does A.E. want? Reports conflict. According to her mother, A.E. does not want to see Arthur or have a relationship with him. But at the hearing, A.E.'s attorney shared her recent conversation with the child:

> I asked her, among other things, if there was anything else that she would like the judge to know, and she said that she would like to see her father. And it kind of came out of the blue. I asked her when the last time she saw her father was, and she said when she was nine years old . . . .
> . . . I asked what she was envisioning, and she said, you know, like regular divorced families, every other weekend and some time during the week.

For the record, A.E.'s guardian ad litem (GAL) opposed intervention. The GAL recognized A.E. was "a remarkable child who definitely has strong opinions and has thought them out." But the GAL argued it was not in A.E.'s best interests to remove her from her current placement with her maternal grandparents and half-sister. By all reports, A.E. is doing well in that placement.

Deferring to the juvenile court's determination that Arthur lacked a sufficient interest in the CINA case, we find no error in the denial of his motion to intervene. We reach this conclusion even though A.E. expressed an interest in seeing him again. To be clear, this not a case in which the proposed intervenor is a stranger to the child. *See In re B.B.M.*, 514 N.W.2d 425, 429 (Iowa 1994) (noting grandparents were "strangers" to the child but still allowing intervention under the unique circumstances where child had an unusual genetic disorder). But neither is it the kind of relationship with a "suitable person" that courts have found justifies intervention. *See, e.g.*, *J.C.*, 857 N.W.2d at 508 (allowing established but

nonbiological father to intervene because he had custody of child for three years while mother was in prison); *In re C.L.C.*, 479 N.W.2d 340, 344 (Iowa Ct. App. 1991) (allowing couple to intervene and seek custody of two children when they babysat those children ten to fifteen hours per week, attended their medical appointments, gave them birthday presents, and contributed to them financially, noting the couple was "involved in the routine care of these children, and the children have come to rely upon their love and care").

Unlike those circumstances, Arthur's belated and generalized desire to be considered a placement—and A.E.'s interest in renewing visitation with her biological father after not seeing him for two years—do not together create a sufficient legal interest. As voiced by her GAL, denial of the petition was in the child's best interests. The court did not err in denying the motion to intervene.

**AFFIRMED.**