# IN THE COURT OF APPEALS OF IOWA

No. 21-0071
Filed April 14, 2021

**IN THE INTEREST OF N.W.,**
**Minor Child,**

**J.N., Mother,**
    Appellant,

**T.W., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III, District Associate Judge.

Parents separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

T. Cody Farrens of Fankhauser, Farrens & Rachel, P.L.C., Sioux City, for appellant mother.

Jessica R. Noll of Deck Law PLC, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Marchelle M. Denker of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Parents separately appeal the termination of their parental rights to their child, born in April 2018, pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2020).[1]  Both parents challenge the sufficiency of the evidence supporting the statutory grounds for termination, argue termination is contrary to the child's best interests, and request an additional six months to work toward reunification.

## I.      Background

The parents have a long history of domestic disturbances and violence, dating back to before the child's birth.  Between mid-2017 and mid-2018 there were a slew of law-enforcement contacts with the parents due to altercations between the parents.  The Iowa Department of Human Services (DHS) became involved in June 2018 upon a report the father kicked in the mother's door and threw a television on the floor, in the child's presence.  The mother requested criminal charges be dropped.  Reports of disturbances continued through July of 2019.  The bulk of these incidents were alcohol and drug related.  Late that month, DHS received reports the parents left the child at home alone for five hours while they went out drinking, the father had previously done so while he went to a casino, the father was using and selling marijuana from his home, and the child had recently suffered a broken leg.

Based on the parents' long history of discord and substance abuse, the State filed a petition to adjudicate the child as in need of assistance (CINA) in

---

[1] The father's biological relation to the child was never established through paternity testing, but he is listed on the child's birth certificate.  The court terminated the parental rights as to any other putative father, and no other father appeals.

August. At the ensuing hearing on the petition, the State requested the child be placed in the father's custody and visitation for the mother be at DHS discretion. The court adjudicated the child as in need of assistance and placed her in DHS custody for placement with the father, with another relative, in foster care, or with another suitable person.

The parents submitted to drug testing in November. The mother tested negative for all substances, despite reporting recent use of cocaine, and the father tested positive for cocaine. Due to the father's positive test, the child was placed with her paternal grandmother, where she has remained. Following a substance-abuse evaluation, the mother was recommended to participate in intensive outpatient treatment in relation to her alcohol abuse. She was discharged from treatment about a month later for lack of attendance. The mother continued to exhibit signs of alcohol abuse and suicidal behavior. The father tested negative for drugs in December 2019 and January 2020. By the time of the dispositional hearing in January 2020, the father had also undergone a substance-abuse evaluation. He was recommended to engage in extended outpatient treatment. Also around this time, the mother admitted ongoing use of methamphetamine for a period of three weeks. The father tested negative for drugs in February and continued participating in treatment. Then, in March, the father was arrested on several traffic charges, including operating while intoxicated (OWI).[2] The father's participation in treatment was sporadic that month. In April, the father continued to test negative for drugs and reengaged in treatment.

---

[2] The father later pleaded guilty to the OWI charge.

The mother obtained a second substance-abuse evaluation in May. Extended outpatient treatment was again recommended. The father again tested negative for drugs in May, but his engagement in treatment was inconsistent. Both parents underwent mental-health evaluations in June. The mother was recommended to engage in mental-health treatment, but the father was not. By June, the father's participation in substance-abuse treatment was stagnant and his counselor reported he was not committed to treatment.

The State filed a petition to terminate the parents' rights in late June. Up to that point, the mother was inconsistent in attending visits with the child and had not progressed beyond supervised visits. She had also largely evaded drug testing. The father was generally consistent in attending visits and had progressed to semi-supervised visits in February 2020. He was returned to fully-supervised visits following his OWI arrest and did not progress back to semi-supervised. In July, the father tested positive for alcohol and his attendance at treatment was sporadic. In August, he tested negative for all substances and regularly attended treatment. His participation in treatment continued to improve in September.

The matter proceeded to a termination hearing over two days in October. The mother was still inconsistent in attending substance-abuse treatment. By the time of the second day of hearing, the father had been successfully discharged from substance-abuse treatment. It was recommended that he begin attending recovery meetings, obtain sponsorship, and take relapse-prevention measures. The father had yet to meaningfully engage in recovery meetings or obtain a sponsor, and he testified that he had no desire to continue substance-abuse treatment, as he believed he no longer had a problem. While each of the parents

testified they were no longer in a relationship, the mother testified they shared an intimate encounter as recently as August, when the pair went to a casino, gambled, and consumed alcohol.  The child had been placed with the paternal grandmother for nearly a year.  The grandmother testified she intended to adopt the child if termination occurred but noted she would continue to allow the parents to have contact with the child.

Following hearing, the court terminated both parents' rights pursuant to Iowa Code section 232.116(1)(h) and (*l*).  The court concluded the child could not be returned to either parent's care at the time or in the foreseeable future, termination is in the child's best interests, and no permissive exception to termination should be applied.  Both parents appeal.

## II.     Standard of Review

Appellate review of orders terminating parental rights is de novo.  *In re A.B.*, ___ N.W.2d ___, ___, 2021 WL 935436, at *5 (Iowa 2021); *In re C.Z.*, ___ N.W.2d ___, ___, 2021 WL 934999, at *5 (Iowa 2021).  Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home.  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    Analysis

### A.     Mother

#### 1.     *Sufficiency of the evidence*

The mother challenges the sufficiency of the evidence supporting the statutory grounds for termination.  "[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence."  *In*

*re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to focus on Iowa Code section 232.116(1)(h). As to that section, the mother only challenges the State's establishment of the final element—that the child could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the children cannot be returned to the custody of their parents at the present time); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

The mother has a long history of alcohol abuse, which has resulted in instability, erratic behavior, and violent tendencies. She has never provided full-time care for the child, even before DHS intervention. She was inconsistent in attending treatment and visits. In order for the child to be returned to the mother, she needed to demonstrate an extended period of sobriety, stability, and parenting capabilities, which she failed to do. We agree the child could not be returned to the mother's care and the evidence was sufficient to support termination under section 232.116(1)(h).

### 2. Best interests

We turn to the mother's best-interests challenge. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The mother argues, "Terminating parental rights right now does nothing to further" the child's best interests because "termination will not fundamentally

change the role of the parents or access to the child." She also argues the child will be disadvantaged as a result of losing the benefits that accompany a parent-child relationship, such as financial support. True, the mother will still have access to the child, and we agree the mother's parenting role will not change. The problem is the mother has not meaningfully served as a parent to the child. The mother has been given ample time to get her affairs in order, and the child's best interests are best served by providing permanency and stability now. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting it is not in the best interests of children to keep them in temporary situations "while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). We find termination to be in the child's best interests.

### 3.    *Additional time*

The mother requests additional time to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

We agree with the mother she got off to a "slow start" in participating with services. She did not start to meaningfully engage in services until the possibility of termination reared its head. The mother simply waited too long to engage in services. Given the mother's history, she would be required to fully engage in

services for an extended period of time before the child could be returned to her care, and we determine this process would take longer than six months. We are unable to conclude the need for removal from the mother's care would no longer exist after an extension, so we decline the mother's request for an extension.

We affirm the termination of the mother's parental rights.

B. Father

1. *Sufficiency of the evidence*

The father also challenges the sufficiency of the evidence supporting the statutory grounds for termination. As noted, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *D.W.*, 791 N.W.2d at 707. We again choose to focus on Iowa Code section 232.116(1)(h). Like the mother, the father only challenges the State's establishment of the final element—that the child could not be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *D.W.*, 791 N.W.2d at 707.

We fully acknowledge the progress the father made during the proceedings, although it was sporadic at times. However, we also note the father has a long history of substance abuse. While the father was successfully discharged from substance-abuse treatment by the second day of trial, he was recommended to begin attending recovery meetings, obtain sponsorship, and take relapse-prevention measures. The father had yet to meaningfully engage in recovery meetings or obtain a sponsor, and he testified that he has no desire to continue substance-abuse treatment, as he does not believe he has a problem. Given the father's history, we find this concerning. The father's use did not discontinue until

court involvement and his participation, albeit sporadic, in substance-abuse treatment.  If the father is not going to engage in relapse-prevention measures, as he has demonstrated and explained, then the child cannot be returned to his care.  So, we find the evidence was sufficient to support termination under section 232.116(1)(h).

### 2. Best interests

The father also claims termination is contrary to the child's best interests.  As noted, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).

The father's declination to engage in relapse-prevention is also a concern on the best-interests front.  If those measures are not pursued, then the father is not the best placement for providing safety, furthering the long-term nurturing and growth, or meeting the needs of the child.  *See id.*  We conclude termination is in the child's best interests.

### 3. Additional time

In his request for additional time, the father highlights that he has completed substance-abuse treatment, his recent drug tests have been negative, and he has stable housing and employment.  He asserts these facts justify additional time to work toward reunification.  We disagree.  While it is a relatively minor point, we point out that, while the father has an apartment and a job, he obtained both less than two months prior to the termination hearing.  It is commendable the father has

housing and employment, but it remains to be seen whether either or both can be maintained on a long-term basis.

A much more important consideration that undermines the father's request for a six-month extension is the father's substance-abuse treatment history and plan. The father did not meaningfully participate in substance-abuse treatment until the termination hearing was imminent. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). While he completed treatment just a few days before the conclusion of the termination hearing, he missed a significant number of recommended group meetings over the course of his treatment.

More alarming is the fact the father admitted that he did not believe continued treatment was for him, did not believe he had a substance-abuse problem, did not believe he had an alcohol-abuse problem, and did not plan to continue with treatment even though continued treatment was recommended. This is particularly alarming given the fact the father has a long history of substance abuse; his substance abuse has contributed to violence in front of the child and created chaos in her life; he has a recent history of relapse; and he has a recent conviction for OWI. In order to grant the father an additional six months to work toward reunification, we must first be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Given the father's track record of problems, his eleventh-hour

efforts at treatment, and his stated intention to not follow through with treatment, we cannot make a determination that the conditions that prevent the child's return to the father's care will no longer exist if an additional six months was allowed.[3] Therefore, we decline the father's request for an extension, and we affirm the termination of his parental rights.

## IV. Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**

---

[3] We are mindful of and have considered the supreme court's recent decision in *In re C.Z.*, in which the order terminating the father's parental rights was reversed based on the father's progress leading up to the termination hearing. 2021 WL 934999, at *8–9. Because of the fact-intensive nature of termination cases, other cases are of "little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us." *In re C.L.C.*, 479 N.W.2d 340, 343 (Iowa Ct. App. 1991). Here, we find the facts distinguishable from those in *C.Z.* In comparison to the quality, quantity, and longevity of the improvements exhibited by the father in *C.Z.*, the father here had several recent missteps, had only shown initiative on the eve of the termination hearing, and, most importantly, did not believe he had a substance-abuse problem and had no intention of continuing with treatment. Given the role substance abuse has played in the father creating an environment of chaos for the child throughout her life, the father's unwillingness to continue much-needed treatment is a deciding factor and one that distinguishes his case from that of the father in *In re C.Z. See In re T.S.*, 868 N.W.2d 425, 443 (Iowa Ct. App. 2015) (noting that, because of the intensely fact-based nature of termination cases, the decision often hinges on "a single, or seemingly minor fact or factor").