# IN THE COURT OF APPEALS OF IOWA

No. 21-0564
Filed July 21, 2021


IN THE INTERESTS OF I.B. and O.B.,
Minor Children,

S.M., Mother,
    Appellant,

A.B., Father,
    Appellant.

_____


Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District

Associate Judge.


The mother and father of both children separately appeal the termination of

their parental rights. **AFFIRMED ON BOTH APPEALS.**


Gina E.V. Burress of Carr Law Firm, P.L.C., Des Moines, for appellant

mother.

Donna M. Schauer of Schauer Law Office, Adel, for appellant father.

Thomas J. Miller, Attorney General and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Kayla Stratton of Des Moines Juvenile Public Defender's Office, Des

Moines, attorney and guardian ad litem for minor children.


Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

The mother and father of O.B., born in 2012, and I.B., born in 2013, separately appeal the order terminating their parental rights. On appeal, both parents contend the State failed to present clear and convincing evidence establishing the statutory grounds for termination. The father also contends the exceptions in Iowa Code section 232.116(3)(a) and (c) (2020) should be applied to preclude termination of his rights.[1] After our de novo review of the record,[2] we find there was clear and convincing evidence establishing the statutory grounds for terminating the rights of both parents and no permissive exception should be applied to preclude termination of the father's rights. Accordingly, we affirm.

---

[1] Although the father's petition on appeal references challenging termination because the State failed to prove termination was in the best interests of the children, the father cites no authority and makes no argument in support of this claim, so we consider it waived and do not consider it. *See* Iowa Rs. App. P. 6.201(1)(d) ("The petition on appeal shall substantially comply with form 5 in rule 6.1401."); 6.1401–Form 5 ("[S]tate what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal. . . . *General conclusions, such as 'the trial court's ruling is not supported by law or the facts' are not acceptable.*"); *see also* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

The father also points to the claimed progress of the mother as a way to challenge termination of his rights. However, the father cannot rely on any claimed progress by the mother to avoid termination of his rights. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (holding one parent lacks standing to assert arguments on behalf of the other parent); *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005) (holding one parent cannot assert factual or legal positions pertaining to the other parent, as the court makes a separate adjudication as to each parent). As a result, we do not consider this aspect of the father's challenge on appeal.

[2] "We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

**I.**     **Factual and Procedural Background.**

The Iowa Department of Human Services (DHS) became involved with this family due to the presence of methamphetamine and drug paraphernalia in the mother's home where the children also lived. The children were removed from the parents' care in August 2019. Shortly before removal, the mother was arrested for possession of methamphetamine and paraphernalia. At the time of the termination hearing, she was on probation for possessing the methamphetamine found in her home. At the time of removal and thereafter, the mother struggled with substance abuse, namely intravenous methamphetamine and heroin use. The father also struggled with substance abuse. The parents engaged in drug use together.

The children were adjudicated children in need of assistance a few months after removal, with the juvenile court finding the children were exposed to methamphetamine and both parents had supervised the children while under the influence of methamphetamine. In the following months, the court found continued out-of-home placement to be necessary.

Both parents continued having difficulties with substance-abuse and mental-health issues throughout the case. The mother attempted several inpatient treatment programs but did not successfully complete any. Around nine months after the children's removal, the mother tested positive for methamphetamine, amphetamines, and fentanyl at the time of her admission to an inpatient treatment facility. Although the mother participated in a drug test about a month before the termination hearing that came back negative, this was the only drug test the mother participated in for the DHS and its service providers during the entire case, as the

mother failed to submit to other requested drug tests. Due to the refused tests, the mother's one negative test did not alleviate the DHS's concerns.

The father had similar difficulties between removal and the termination hearing. He failed to meaningfully participate in substance-abuse treatment, did not participate in requested drug testing, and failed to engage in mental-health treatment. The father would sometimes visit a therapist, but he often became angry with her and would cease attending appointments.

While everyone agrees the parents love the children and vice versa, the fact remains the parents have not progressed past supervised visits. Both parents had supervised visits with the children while the children were living in their foster home. There were several instances when the mother and father were late to scheduled visits or would miss visits altogether. The father also fell asleep during several visits. Service providers and DHS workers also noted concerns with the mother's and father's emotions around the children, noting the parents were often overly emotional and negative during visits, causing the children to feel the need to protect the parents or alleviate the parents' distress and sadness.

At the first permanency hearing, all parties agreed to give the parents an additional six months to work toward reunification pursuant to Iowa Code section 232.104(2)(b). The juvenile court granted the requested extension due to the progress the parents had made, which included the mother entering a residential treatment facility and the father re-engaging in services. In granting the extension, the juvenile court stressed that the mother would need to show she could maintain sobriety and the father would need to start complying with drug testing and fully engage in services. The month after the extension was granted, the mother was

unsuccessfully discharged from the treatment facility due to noncompliance, leading the State to initiate these termination proceedings.

After the mother was discharged from the treatment facility, she did not re-enroll in substance-abuse or mental-health treatment. By the time of the termination hearing, she had obtained employment and begun a Suboxone regimen, but she had not obtained stable housing. She periodically stayed with friends, rented a motel room by the week, or lived in her vehicle. The father also did not have suitable housing for the children. Although he inherited a house, the father lived with roommates who were not suitable for being around the children, the house did not have electricity at times, and the residence was not clean or safe for children.

The children have done well in their current placement. *See* Iowa Code § 232.116(2)(b) (permitting consideration of whether children have been integrated into their foster home in assessing whether termination is in the children's best interests). Their needs are well met in the home. The children are progressing both academically and socially, and they participate in weekly therapy sessions. Instances when the children exhibit concerning and aggressive behavior have decreased, with the remaining episodes occurring after their visits with the mother and father.

Following a termination hearing, the juvenile court terminated both the mother and father's parental rights to the children pursuant to Iowa Code section 232.116(1)(d) and (f). Both parents appeal.

**II.    Discussion.**

Termination-of-parental-rights proceedings follow a three-step process.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  First, a ground for termination under Iowa Code section 232.116(1) must be established.  *Id.*  Second, if a ground has been established, the court considers whether termination is in the best interests of the children, examined under the framework in section 232.116(2).  *Id.* at 706–07.  Third, if the best-interests analysis supports termination, the court must then consider whether any applicable exceptions in section 232.116(3) should be applied to preclude termination.  *Id.* at 707.  As previously noted, the mother challenges the first step, and the father challenges the first and third steps.

**A.    Statutory Grounds.**

As for the parents' challenges to the statutory grounds, we may affirm the termination on any grounds supported by clear and convincing evidence.  *See id.*  That is, if the juvenile court relies on more than one ground for termination, we will affirm if we find clear and convincing evidence for just one.  *See id.*  We choose to focus on the ground set forth in Iowa Code section 232.116(1)(f).

Under Iowa Code section 232.116(1)(f), the court may terminate parental rights to a child if: (1) the child is at least four years old; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the parent's physical custody for at least twelve of the last eighteen months, or for the last twelve consecutive months with any trial period at home lasting less than thirty days; and (4) there is clear and convincing evidence that the child cannot be returned to the parent's custody at the present time.

Both parents concede the first three elements are met and only challenge the fourth. They contend there was not clear and convincing evidence the children could not be returned to their physical care at the time of the termination hearing.

As to the mother's position, she heavily relies on our decision in *In re M.S.*, No. 16-1860, 2017 WL 362606, at *1–3, 5 (Iowa Ct. App. Jan. 25, 2017). The mother asserts *M.S.* should determine the outcome in this case. We disagree. As a preliminary point, we note that, because of the fact-intensive nature of termination cases, other cases are of little precedential value and we must base our decision on the particular circumstances of the present case. *See In re C.L.C.*, 479 N.W.2d 340, 343 (Iowa Ct. App. 1991); *see also In re T.S.*, 868 N.W.2d 425, 443 (Iowa Ct. App. 2015) (noting that, because of the intensely fact-based nature of termination cases, the decision often hinges on "a single, or seemingly minor fact or factor").

We find this case distinguishable from *M.S.* In *M.S.*, both parents had their rights terminated after it was discovered the children were living in unsanitary conditions and the parents were abusing illegal drugs. 2017 WL 362606, at *1. Neither parent completed court-mandated substance-abuse treatment, and the mother never completed a drug test free of illegal substances. *Id.* at *2. Even so, our court found the parents had been making meaningful progress in their treatment and reversed the juvenile court's termination order. *Id.* at *5–6.

As part of our fact-intensive review, we note several facts distinguishing this case from *M.S.* The parents in *M.S.* consistently attended their visits with the children. *Id.* at *5. Here, both parents failed to exercise visits they were offered. The mother was frequently late to visits or failed to attend many altogether.

Further, the parents in *M.S.* began providing either clean drug screens or provided drug screens with positive results for marijuana that the State could not link to any adjudicatory harm. *Id.* at *6. Here, there is no evidence the mother made genuine efforts to treat her underlying mental-health and substance-abuse issues, as she failed to meaningfully participate in treatments. While the mother had one clean drug test, there are significant concerns that she failed to complete a substance-abuse treatment program, and she remains inconsistent with mental-health treatment. This minimal progress combined with her sporadic visits with her children distinguishes this situation from that presented to us in *M.S.* Further distinguishing this matter from *M.S.* is the fact there is no indication the parents in *M.S.* did not provide a stable home for the children. Here the evidence establishes the mother failed to provide a stable home for the children.

In short, the facts here sufficiently distinguish this case from *M.S.* that *M.S.* does not control. On our de novo review, we find clear and convincing evidence that the children could not be safely returned to the mother's care at the time of the termination hearing.

The father also asserts there was insufficient evidence to establish the children could not be returned to his care. He states, "No evidence was offered, whatsoever, to show he ever physically abused or harmed his children or exposed them to abuse or harm." This misses the mark. Being a fit parent involves much more than just refraining from physically abusing the children. In the approximately eighteen months the children were removed from the parents' custody, the father never progressed past supervised visits. He remained unemployed throughout that time as well. He did not have a suitable residence for the children. Other

individuals living in the home were not suitable to be around children, the house's utilities were frequently shut off, and the children did not have beds on which to sleep.

Furthermore, the father had unmitigated substance-abuse and mental-health problems. The mental-health issues manifested themselves in the father crying during visits, causing the children to feel the need to parent their father. Also, the father fell asleep during several visits, prompting the supervising workers to end the visits early. Further, there were several times the father did not take advantage of the opportunities he was given to visit his children. Based on our de novo review, we agree with the juvenile court. We find clear and convincing evidence the children could not be safely returned to the father.

**B.      Permissive Exceptions.**

If the statutory grounds for termination have been established and termination is found to be in the children's best interests, we must then consider whether there are any exceptions set forth in section 232.116(3) that should be applied to preclude termination. *See D.W.*, 791 N.W.2d at 709. The exceptions to termination set forth in section 232.116(3) are permissive, not mandatory, so the court is not required to apply them even if they have been established. *A.S.*, 906 N.W.2d at 475. The parent resisting termination bears the burden of proof to establish an exception under section 232.116(3). *Id.* at 476.

The father asserts that the exceptions in section 232.116(3)(a) and (c) should be applied to preclude termination of his parental rights. Those exceptions read:

The court need not terminate the relationship between the parent and child if the court finds any of the following:
a. A relative has legal custody of the child.
. . . .
c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

The father's challenge based on section 232.116(3)(a) fails because the DHS, not a relative, has had legal custody of the children from the time of removal through the termination hearing.

As for his challenge based on section 232.116(3)(c), the father asserts it would be detrimental for the children if his rights were terminated because of the close bond they share. We disagree. The father often failed to visit with and call his children when scheduled. The father also fell asleep during several supervised visits with the children. Supervising workers noted the children love their father; however, it was also noted that there are concerns the children feel responsible for their father, much like they have assumed a parental role. This does not reflect an appropriately close parent-child bond. Furthermore, "love is not enough to trigger this exception." *In re A.M.*, 20-0480, 2020 WL 4814170, at *4 (Iowa Ct. App. Aug. 19, 2020) (citing *D.W.*, 791 N.W.2d at 709). The relevant consideration when assessing this exception is not the parent's love for the children, but whether the children will be disadvantaged by termination. *Id.* The father failed to meet his burden of establishing the children will be disadvantaged by termination. For these reasons, we decline to find that this exception precludes termination of the father's rights.

**III.    Conclusion.**

We find the State proved the statutory grounds for terminating the parental rights of both parents.    We also find no permissive exceptions preclude termination.    As a result, we affirm the juvenile court's order terminating the parents' rights to these children.

**AFFIRMED ON BOTH APPEALS.**