# IN THE COURT OF APPEALS OF IOWA

No. 21-0601
Filed September 22, 2021

**IN THE INTEREST OF H.J. and L.J.,**
**Minor Children,**

**J.J., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A father appeals the termination of his parental rights to two children. **AFFIRMED.**

Nancy L. Pietz, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Kimberly Graham, Indianola, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

A father, Jesse, appeals the termination of his parental rights to his son, H.J. (born in 2018), and his daughter, L.J. (born in 2017). Jesse, who has been incarcerated through most of this case, faults the Iowa Department of Human Services (DHS) for failing to thoroughly investigate whether it could place the children with a relative. He reasons that if the DHS had placed the children in the custody of one of his two sisters, he could have argued for an exception to termination under Iowa Code section 232.116(3)(a) (2020).

But the record shows the DHS adequately investigated and rejected the possibility of placing the children with either sister. We also find Jesse failed to preserve his statutory-grounds argument. And he lacks standing to appeal the denial of his sister's motion to intervene. Finally, because termination was in the children's best interests, we affirm.

## I. Facts and Prior Proceedings

Jesse's troubles parenting did not start with H.J. and L.J. He and Kayla, the mother, lost their rights to two older children in 2016. Those terminations involved unresolved substance abuse and criminal matters preventing the parents from providing a safe home for the children.

Fast forward three years, and little changed. Jesse had ongoing substance-abuse problems and collected more drug and assault convictions. Several charges stemmed from his violence against Kayla with the children present. For instance, in August 2019, the DHS removed the children after Jesse attacked Kayla while she was holding L.J. He was arrested again in December for assaulting Kayla, who was then pregnant with another child. Jesse was charged

with domestic assault causing bodily injury. He was sentenced to serve a fourteen-year sentence for several offenses, including child endangerment.

While incarcerated, Jesse has not participated in services. At the termination hearing, he testified the COVID-19 pandemic put a hold on the programming he sought including substance-abuse treatment and Alcoholics and Narcotics Anonymous meetings. Nor has he had contact with the children since October 2019. In fact, he was prohibited from visits with L.J. because of a no-contact order issued in the domestic violence case.

Unlike Jesse, Kayla engaged in services recommended by the DHS. In November 2020, it appeared she was progressing and might be able to resume custody, so the court granted her another six months. But Kayla's progress stalled, and the State petitioned to terminate both parents' rights. Meanwhile, the children have been living with the foster family that adopted their older siblings. All reports are that they are doing well in their placement. Kayla testified the foster parents were "very patient" with the children and provided them with emotional stability.

At the termination hearing, Jesse conceded the grounds for terminating his parental rights existed. He agreed he could not resume custody of the children at the present but estimated he would be paroled within ten months. The juvenile court found the State presented sufficient evidence to terminate his parental rights under Iowa Code section 232.116(1), paragraphs (g) and (h).[1]

Also at the termination hearing, the court heard a motion to intervene filed by Jesse's younger sister Megan. She wished to be considered a placement

---

[1] Kayla consented to the termination of her parental rights.

option after the termination, not during the child-in-need-of-assistance (CINA) proceeding. The court denied the motion, citing the children's best interests as they had very little relationship with Megan. Jesse appeals.[2]

## II. Analysis

### A. Issues preserved for appeal

The State "does not concede" error preservation on any of the five grounds alleged in Jesse's petition on appeal. His petition asserts error was preserved when each issue "was contested at trial." But that assertion is not accurate. We find Jesse's challenge based on paragraph (h) as the statutory ground for termination is not preserved for our review. Jesse admitted at the termination hearing that the children could not be returned to his care because he was incarcerated. *See* Iowa Code § 232.116(1)(h)(4). Because Jesse did not dispute that ground below, the juvenile court's findings stand on appeal. We affirm the termination under paragraph (h).

Next, we find Jesse lacks standing to protest the juvenile court's denial of Megan's motion to intervene. He argues, "If the motion to intervene would have been granted, the children would have been able to argue placement with a relative which would have changed the arguments [Jesse] would have been able to make." The juvenile court denied Megan's motion to intervene as contrary to the best interests of the children. But a father lacks standing to raise an argument on behalf

---

[2] "We review child-welfare proceedings de novo." *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). "The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility." *Id.* Our primary concern is the best interests of the children. *Id.* But we review a juvenile court's denial of a motion to intervene for the correction of legal error. *In re H.N.B.*, 619 N.W.2d 340, 342–43 (Iowa 2000).

of another party "in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights." *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007); *see also In re S.P.*, No. 19-0069, 2019 WL 1294178, at *2 (Iowa Ct. App. Mar. 20, 2019) (finding a mother did not have standing to challenge denial of paternal grandmother's motion to intervene). So we do not address Jesse's claim that the court should have granted Megan's motion to intervene. We will now address his other contentions.

## B. Relative placement

Although Jesse lacks standing to assert Megan's right to intervene, he can still challenge the DHS's efforts to place the children with her or another relative. To that end, Jesse contends the DHS "should have made every effort to seek out the relative who had previously indicated a willingness to care for and provide a permanent home for the child." He argues the DHS did not try hard enough to place the children with his sisters.

True, Iowa Code section 232.102(7) requires the DHS to "make every *reasonable* effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (emphasis added). "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.* The reasonable-efforts requirement is not "a strict substantive requirement of termination." *Id.* But when relying on paragraph (h) as a ground for termination, as it did here, the State must show the DHS made reasonable efforts toward reunification as part of its ultimate burden of proof. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). One service supporting reunification is relative

notice and placement. *See* Iowa Code § 232.84 (requiring the DHS to "exercise due diligence in identifying and providing notice" to the child's relatives, as suggested by the child's parents, that the child is involved in juvenile proceedings).

Jesse testified that in the fall of 2020 he gave the DHS the names of his two sisters, Elizabeth and Megan. In response, the social worker testified the DHS determined Elizabeth was an inappropriate placement because of her criminal history. Megan declined to attend the required foster-care parenting class. And she refused to supervise visitations because Kayla was "rude" to her. So the DHS determined Megan also was not a placement option. At the hearing, Jesse acknowledged the DHS looked into his suggested relative placements. We conclude the DHS's effort to investigate Jesse's two sisters as placement options was reasonable.

### C. Permissive factor

Jesse argues the juvenile court erred in not placing the children in relative care, and therefore in not applying a permissive factor under chapter 232.116(3) to forgo termination. *See* Iowa Code § 232.116(3)(a) (allowing the court to reject termination if the child is in the legal custody of a relative). His argument represents a leap in logic. The children were not in relative custody at the time of the termination hearing, so the court could not have applied this factor.

### D. Best interests

Finally, Jesse contends it was not in the children's best interests to terminate his rights. In making the best-interests determination, we give primary consideration to the children's safety; the best placement for furthering their long-term nurturing and growth; as well as their physical, mental, and emotional

condition and needs. Iowa Code § 232.116(2); *see In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

Jesse contends, "It is clearly in the children's best interests to be placed in the custody of a parent or relative when appropriate." We agree. But family placements were not appropriate for H.J. and L.J. under the existing circumstances. Jesse was incarcerated most of the case and unable to care for the children given his unresolved substance-abuse and domestic violence issues. He had not seen either child since shortly after their removal over a year before. Plus, the children were bonded with their siblings and the foster parents. We conclude termination was in the children's best interests. We affirm.

**AFFIRMED.**